**HOWARD v. OVERHOLSER, Superintendent of Saint Elizabeths Hospital**

No. 8120.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1942.

**430**

Mr. Al Philip Kane, of Washington, D. C., for appellant. Jerome Howard also entered an appearance pro se.

Mr. Bernard Margolius, Assistant United States Attorney, with whom Mr. Edward M. Curran, United States Attorney, and Mr. Charles B. Murray, Assistant United States Attorney, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The proceeding is in habeas corpus. The petition was filed in August, 1941, in forma pauperis and in propria persona. Petitioner was then, as now and since August, 1940, a person adjudicated of unsound mind, confined in respondent's custody at St. Elizabeths Hospital.

The circumstances leading to commitment and the filing of this petition were shortly as follows. In March, 1940, petitioner was arrested for the murder of his mother. Her body was found in a residence which she owned, and occupied with him at 815 Taylor Street Northwest, Washington. He admitted killing her but could give no reason. He was taken before the grand jury, but lunacy proceedings were instituted and an Ignoramus was returned on the charge of murder. In August, 1940, the District Court, after hearing before the Commission on Mental Health and on its report and recommendation,[1] adjudged petitioner of unsound mind and ordered his commitment. The order expressly found he was a resident of the District of Columbia within the provisions of what is now Section 21—317, D.C.Code (1940), set forth below. There was no objection to the jurisdiction or the findings and no appeal was taken from the order.

Petitioner was not represented by counsel or guardian ad litem in the present proceeding in the trial court. Counsel assigned here has appeared for him on the appeal.

Originally the petition sought alternative relief, complete discharge as a sane person or transfer into the custody of the State of Colorado as an insane person resident there pursuant to Section 21—317. The section is as follows:

"If an insane person be found by the commission, subject to the review of the court, not to be a resident of the District of Columbia, he may be committed by the court to Saint Elizabeths Hospital as a District of Columbia patient until such time as his residence shall have been ascertained. Upon the ascertainment of such insane person's residence in some other jurisdiction, he shall be transferred to the state of such residence. The expense of transferring such patient, including the traveling expenses of necessary attendants to insure his safe transfer, shall be borne by the District of Columbia only if the patient be indigent.

"Any insane person found by the commission to have been a resident of the District of Columbia for more than one year prior to the filing of the petition, and any person found within the District of Columbia whose residence can not be ascertained, who is not in confinement on a criminal charge, may be committed by the court to, and confined in, said Saint Elizabeths Hospital, or any other hospital in said District, which, in the judgment of the commission of said District, is properly constructed and equipped for the reception

---

[1] D.C.Code (1940) §§ 21—308, 21—316.

and care of such persons, and the official in charge of which, for the time being, is willing to receive such persons.

" 'Resident of the District of Columbia,' as used in this section, means a person who has maintained his principal place of abode in the District of Columbia for more than one year prior to the filing of the petition provided for in section 21—310."

The return justified the detention by virtue of the order of commitment; denied petitioner is sane; set forth his physicians' opinions that he is dangerous; objected to his being discharged; stated respondent is unaware whether he is a resident of Colorado, and objected to his being transferred to that state "except on conditions which will protect both the patient and the public."

After the return was made petitioner filed a "concise statement of my case in writing," which said in part: "This Hearing has but one purpose,—to effect my transfer to the State of Colorado. * * * I waive my right to a sanity hearing at this Hearing as I have no expert testimony. * * * I repeat: The sole object of this Hearing is to effect my transfer to the Colorado State Hospital for the Insane, at Pueblo, Colorado."

Accordingly, the hearing and all subsequent proceedings have been conducted on the basis that their only purpose is to secure an order for petitioner's transfer to the Colorado authorities. No evidence was offered to show that he is sane or that his commitment was illegal. Regarding the issues as narrowed to the question of transfer, petitioner and his counsel insist his legal residence is controlling. The theory is that he is a resident of Colorado, was such when he was committed, and this entitles him under Section 21—317 to an order for the transfer to be made in this proceeding. Accordingly, the petition alleges his Colorado residence and evidence was presented which may be taken as sufficient to establish it.

Respondent does not deny that petitioner is a resident of Colorado. Rather the return states he is unaware whether petitioner is a resident of the District of Columbia or of Colorado and calls attention of the court to the duty of the Board of Public Welfare to ascertain the legal residence of patients supported at the expense of the District and to arrange for transfer if the patient is harmless. Although the return asserts petitioner is not harmless, it states respondent does not object to a hearing on the writ, but does object "to his being discharged * * * or being transferred except on conditions which will protect both the patient and the public." Petitioner is described as being, in the opinion of the physicians who have cared for him, "of unsound mind suffering from a paranoid form of dementia precox * * * dangerous and should not be discharged into the community."

Respondent offered no evidence that petitioner is not a resident of Colorado. Rather the record discloses, in line with the return's suggestion, that the Board of Public Welfare made inquiry of the Colorado authorities with a view to having them recognize petitioner's claim and receive him in custody as a resident insane person. The Board supported the claim with the results of its own investigation. Apparently as a result of the inquiry, perhaps also of suggestions made to petitioner by the superintendents of Colorado hospitals, including the State Hospital for the Insane, the matter was referred to the County Court of El Paso County, where petitioner resided from 1925 until May, 1939, and where he claimed his legal residence. Under Colorado law the county court determines upon the admission of insane residents to state institutions for their care.[2] The record contains what purports to be a copy of an order of the court. It finds that petitioner is not a resident of Colorado, that he has an estate and therefore is not a pauper, and concludes he is not entitled to be returned to Colorado as a resident insane person.

In this state of the pleadings and evidence the trial court found that "the State of Colorado upon being requested to accept petitioner as a bona fide resident of that jurisdiction refused to accept him for hospitalization and mental treatment." As conclusions of law it held that petitioner is not entitled to be transferred and has established no ground for release from custody. Accordingly it discharged the writ, dismissed the petition, and remanded petitioner to respondent's custody.

The court made no finding or conclusion on the question of residence. But the findings of fact set forth the physical

---

[2] Colo.Ann.Stat. (Courtright, 1930) §§ 2867, 2868, 2873.

changes of abode of petitioner and his mother over a period of many years. It was shown that they resided in El Paso County, Colorado, from 1925 to May, 1939. During all this period she owned the Taylor Street property, but the evidence is clear that her legal residence and petitioner's were in Colorado until they came to Washington in May, 1939. They occupied the Taylor Street house until August, when they returned to Colorado. They remained there until November. Then they came back to Washington and occupied the residence here until the matricide. From the evidence it could have been found they came and remained here in order to sell or rent the property and always had the intention to return to live in Colorado.

Petitioner and his counsel insist the controlling question is his legal residence and that the undisputed evidence shows it is in Colorado. They construe Section 21—317, therefore, as conferring upon him the right to be transferred to that state. Corollary contentions are that habeas corpus is the proper remedy and the courts of this jurisdiction have power to enforce the right by an order for the transfer in this proceeding.

■ The statutory provision for transfer applies literally to insane persons found *not* to be resident in the District. It does not purport to confer such a right on persons found to be resident here or whose residence cannot be ascertained. The finding referred to obviously is the one made in the commitment proceedings, not in some other. Petitioner was found to be a resident of the District when he was committed. It is at least doubtful therefore that he is within the terms of the section.

■ Counsel seeks to avoid this by attacking, not the validity of the commitment, but merely the finding of residence. He argues the finding is invalid, because the court made no independent determination of residence, but merely adopted the finding of the commission in this respect. We think the contention is without merit, since the statute provides a period of five days following the filing of the report and recommendations in which to demand a jury trial or a further hearing by the court. In this case no demand was made. The court therefore was clearly authorized to act on the report and recommendations without more, except to examine them and find them sufficient. As has been stated also there was no objection to the findings

or the proceedings by appeal or otherwise. They appear to have been valid in all respects.

■ But we need not determine whether the finding is res judicata further than to authorize commitment as the statute specifies, or with the effect of precluding a further determination of residence for purposes of transfer. If it is assumed that petitioner has or may establish some right of transfer, it is obviously not an absolute one. The statute does not contemplate that a committed insane person shall be transferred in any case to the state of his residence without regard to its willingness to receive him. Obviously it is not intended, and petitioner does not argue, that he shall be taken to Colorado and there discharged into the community without further restraint. It is intended rather that he shall be delivered into the hands of the state officials who are charged with the custody of its insane residents. This is clearly implied by the general terms and purposes of the section and from the specific provision for travelling expenses "of necessary attendants to insure his safe transfer" if the patient is indigent. There would be no point in safe transfer or attendance if the patient were to be turned loose in the state on arrival.

■ Consequently, to establish and enforce the right petitioner must show either that the state is willing to receive him into such custody or that there is means of enforcing his right to be received as against the state and its officials. If the state is willing to receive the patient and he can establish his residence there it may be that he would be entitled to some form of relief against respondent, if (as would be improbable in such a case) the latter should decline to transfer him and unless relief is barred by the possible application of res judicata discussed above. But in the absence of a showing that the state will receive him and more especially where it appears it will not do so, the patient obviously is not entitled to relief.

It matters little whether the difficulty is regarded as affecting the right or merely its enforcement. In the former aspect relief cannot be given because the conditions which bring the right into play have not been shown to exist. In effect the right of transfer is conditioned upon a showing that the state is willing to receive the patient. We think this was what Congress intended, rather than, as counsel has argued

on appeal, to create binding obligations both upon respondent to deliver and upon the state to receive the patient. The very difficulties in the way of enforcing the latter type of obligation make it improbable Congress intended, even if it could, to create it. The more reasonable view is that Congress intended the patient, otherwise qualified, to be transferred only upon establishing the state's willingness to receive him into its custody.

In this case the evidence clearly established that Colorado has declined to receive the petitioner. Counsel attack the purported order of the county court as invalid for obviously ineffective service of process upon the petitioner, the formal defendant in that proceeding. We express no opinion concerning the validity of the order or its effect in adjudicating petitioner's rights or status as a resident of Colorado or otherwise. Whether it is valid or void, in conjunction with the other evidence it is sufficient to establish that Colorado has declined to accept petitioner as a legal resident entitled to admission into the custody of its officials having charge of insane persons. But if the evidence were not sufficient to show this, still there is none upon which the court could find that the state is willing to receive the patient and unless that appears there is no right of transfer under the section.

Furthermore, if we go the full way with counsel and assume that the statute obligates Colorado to receive the petitioner on the showing of residence made here, still he faces an insurmountable barrier. It is that the courts of the District of Columbia have no power or jurisdiction to enforce the state's obligation in this proceeding. Neither the State of Colorado nor its officials have been made parties to it. It is at least doubtful that they could be. U.S.Const. Art. III, § 2; Amend. XI; cf. Hans v. Louisiana, 1890, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842; North Carolina v. Temple, 1890, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849; Fitts v. McGhee, 1899, 172 U.S. 516, 524, 19 S.Ct. 269, 43 L.Ed. 535; Duhne v. New Jersey, 1920, 251 U.S. 311, 313, 40 S.Ct. 154, 64 L.Ed. 280. Nothing this court or the District Court could do could compel Colorado or its officials to perform its obligation, if one were created by the statute. If petitioner has any remedy in this respect, it would appear to be by action in the courts of the state to establish his residential status and right to be received in her custody.[3] Accordingly, the findings and order were correct in so far as they held that petitioner is not entitled to an order for the transfer. They were obviously right in ruling also that he had not established any grounds for release or absolute discharge.

Except for one thing, it would not be necessary to notice the further contentions. As has been noted, the petition was filed in forma pauperis and in propria persona. Neither counsel nor guardian ad litem was appointed or appeared in the trial court. The entire proceedings there were conducted by petitioner in his own behalf. Apparently he made no application for assistance in either respect, and the court did not consider it necessary to supply this on its own motion.

Counsel for petitioner here has raised the issue in relation to the adequacy of the hearing. He says petitioner is incompetent to represent himself, hence did not seriously attack his adjudication, attached exhibits to the petition not properly admissible in evidence, did not object to admission of improper evidence, and otherwise failed in action which competent counsel would have taken.

The objection would require reversal except for the fact that all the defects relied upon related ultimately to the issue of domicil and therefore to the alleged right of transfer to Colorado. Since the petition did not state a cause of action in this respect, it is not apparent how petitioner could have been prejudiced by the inadequacy of the hearing, except in a purely procedural sense, which we think is not sufficient in the circumstances to require another hearing. It would be futile to send the case back for correction of the deficiency and the alleged errors, only to reach the same result on the merits.

---

3 Cf. Tilt v. Kelsey, 1907, 207 U.S. 43, 28 S.Ct. 1, 52 L.Ed. 95; Worcester County Trust Co. v. Riley, 1937, 302 U.S. 292, 299, 58 S.Ct. 185, 82 L.Ed. 268; Andrews v. Andrews, 1903, 188 U.S. 14, 15, 23 S.Ct. 237, 47 L.Ed. 366; Texas v. Florida, 1939, 306 U.S. 398, 410, 59 S.Ct. 563, 83 L.Ed. 817, 121 A.L.R. 1179; Riley v. New York Trust Co., 1942, 62 S.Ct. 608, 86 L.Ed. 885; Pink v. A. A. A. Highway Express, Inc., 1941, 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152, 137 A.L.R. 957.

But in another respect the objection might be fatal if it had not been waived, as we think it was, for that purpose. The petition as it was filed originally purported to set forth two causes of action, one for transfer, one for discharge on the ground of recovery of sanity. As has been noted, the petitioner thereafter undertook, by filing his "concise statement of my case in writing," to waive his right to a hearing on his sanity, and to limit the hearing to the question of his transfer to Colorado. The court apparently accepted this as a sufficient waiver. We do not see how it could be so effective.

■ The petition was sufficient to state a cause of action for discharge and therefore to invoke the court's jurisdiction. That is so notwithstanding it was filed by one adjudicated insane, without the assistance of counsel or guardian or another legally competent to take action in petitioner's behalf. However incapable such a person may be in other respects, so much by way of legal capacity must be conceded to him, namely, ability to start the court's machinery in motion by filing a petition legally sufficient on its face. Without this, persons adjudicated might remain in confinement indefinitely, though in fact restored to sanity, with no legal means of securing discharge. Not all such persons have relatives or friends who will come to their assistance when sanity returns nor can the matter be left wholly to the discretion of officials charged with custody or others having it.

The concession, however, should go no further than the necessity. Once this is served by invoking the court's power, the adjudicated person's capacity to act for himself should end, in accordance with the general rule that he is incapable of taking legally effective action. Not only in respect to transactions, but in relation to litigation, elementary conceptions require that he be represented by another mentally and legally competent. Due process would seem to require this when his rights are involved in court. It is the court's duty, therefore, when a sufficient petition has been filed and its power thereby brought into play, to appoint either a guardian or counsel to represent the petitioner in the further stages of the proceeding.

■■ Petitioner was therefore incompetent to waive his right to a hearing on the question of his sanity, having invoked the court's jurisdiction in this respect, and his attempted waiver was ineffective. However, he has been ably represented by counsel on appeal, who has seen fit to raise no issue on this score, but on the contrary conceded at the argument that a hearing at this time on the question of sanity could have no other effect than a remand of petitioner to custody. Adequacy of the hearing has been questioned only in respect to the alleged right of transfer. In the peculiar situation, we think the action of counsel may be taken as sufficient to constitute a waiver of any right to further hearing in this proceeding upon the question of sanity.

The judgment is affirmed.