## DE MARCOS v. OVERHOLSER.
### No. 8441.

United States Court of Appeals for the
District of Columbia.
Argued June 4, 1943.
Decided Aug. 9, 1943.

See, also, 74 App.D.C. 42; 122 F.2d 16.

Mr. Llewellyn C. Thomas, of Washington, D. C., (appointed by this court), for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and John P. Burke, Assistant United States Attorney, both of Washington, D. C., appeared on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

Appellant, who is confined in St. Elizabeths Hospital on the ground that he is of unsound mind and that his release would be dangerous, filed a petition for a writ of habeas corpus. The court dismissed the petition and discharged the writ. The sole ground of error presented by counsel, appointed to represent the indigent petitioner in this court, is that the court failed to submit the issue of appellant's sanity to the Commission on Mental Health in the District of Columbia.

■ Petitioner repudiated the argument of his counsel and presented independent briefs and arguments, on his own behalf. However, all the issues which petitioner raises independently (except his assertion of the right to a jury trial[1]) have been decided adversely to him by this court in an appeal from the discharge of a former writ of habeas corpus which

[1] We have already held that this right does not exist on the issue of sanity in a habeas corpus proceeding. Barry v. White, 1933, 62 App.D.C. 69, 64 F.2d 707. "Insanity is not a crime and therefore the constitutional guaranty of jury trial is not applicable * * *" to the trial of the issue of lunacy. Barry v. Hall, 1938, 68 App.D.C. 350, 353, 98 F. 2d 222, 225.

he filed in 1940,[2] and we need not consider them again.

Therefore, the only questions for consideration on this appeal are (1) whether in the interests of a fair trial of a habeas corpus proceeding brought to release an alleged insane person from confinement, it is the duty of the court of its own motion to call for and to obtain a report and recommendation from the Commission on Mental Health, and (2) whether that duty is affected by the fact that petitioner does not request or desire the recommendation of the Commission.

■ There can be no question that it is desirable for the court to utilize the services of the Commission on Mental Health in a habeas corpus proceeding where the issue is the sanity of the petitioner. Habeas corpus is a proper remedy to challenge the continued confinement of persons who claim to be restored to mental health.[3] Yet the right to bring habeas corpus would be of little value to an indigent person unless expert testimony were available to him to rebut the opinion evidence of the staff of the institution who believed he should be continued in custody.

No careful judge is likely to assume the responsibility of allowing an alleged insane person to go free when the sole expert opinion in the record advises him that such a course is dangerous to the community. In this case the possible danger is apparent. Petitioner is alleged to be the victim of paranoia. Such patients are sometimes called the aristocracy of the insane because they are often highly intelligent and extremely skillful in handling their affairs to obtain the distorted objectives of their abnormal minds. Obsessed with the delusion of persecution they may become highly dangerous. In cases where the symptoms of paranoia are mild the patient may be safely left to the treatment of relatives and friends. Yet no judge would be justified in using his own amateur judgment in classifying a paranoiac as a mild case, against the opinion of psychiatrists who were holding him in custody, unless he were supported by the opinion of some independent expert.

Therefore, where an indigent confined in a mental hospital seeks habeas corpus it is more important to provide him with an independent psychiatric examination than to give him independent counsel. If such an examination is demanded and denied, the right of an indigent alleged insane person to petition for habeas corpus is entirely meaningless.

It follows that a fair trial cannot be given in a case like this unless the court is permitted to avail itself of every opportunity which the law allows to consult scientific experts. No funds are provided to employ private psychiatrists to examine the petitioner and the court has no power to command their professional services. If, therefore, the statute establishing the Commission on Mental Health permits the court to resort to the expert opinion of that body, it ought to be prompt to exercise that right when in a proper case it is requested to do so.

The statute [4] providing for the Commission on Mental Health was passed in 1938 in recognition of the fact that the assistance of unbiased experts was essential to assist courts in dealing with insanity cases. The duty of the Commission, as stated in the statute, is to "examine alleged insane persons, inquire into the affairs of such persons, and the affairs of those persons legally liable as hereinafter provided for the support of said alleged insane persons, and make reports and recommendations to the court as to the necessity of treatment, the commitment, and payment of the expense of maintenance and treatment of such insane persons." The Commission is required to act under the direction of the equity court. That court may compel by subpoena the appearance of insane persons before the Commission for examination and may compel the attendance of witnesses before the Commission. If appearance before the Commission is prevented by reason of the

---

[2] De Marcos v. Overholser, 1941, 74 App.D.C. 42, 122 F.2d 16.

[3] Ex parte Rosier, 1942, 76 U.S.App.D.C. 214, 133 F.2d 316, 325. As this court said in Howard v. Overholser, 1942, 76 U.S.App.D.C. 166, 130 F.2d 429, 434: "However incapable such a person may be in other respects, so much by way of legal capacity must be conceded to him, namely, ability to start the court's machinery in motion by filing a petition legally sufficient on its face. Without this, persons adjudicated might remain in confinement indefinitely, though in fact restored to sanity, with no legal means of securing discharge."

[4] D.C.Code 1940, § 21—308.

mental or physical condition of the alleged insane person, the Commission may in its discretion examine such person at- the hospital in which he is confined.

■ While the Act by its terms does not make it mandatory on the court to request a report from the Commission on Mental Health, nevertheless, having in view its history and purpose, we think it broad enough to justify our finding in its provisions a discretion in the court to require the Commission's expert assistance in a case in which, by reason of his poverty, a petitioner is unable to · secure the testimony of other professional witnesses.

The Government argues that the Act creating the Commission does not authorize it to make reports and recommendations in cases where the alleged insane person has been legally committed and later seeks release on the ground of restoration of mental health. But we think this begs the question. This legislation was the result of public dissatisfaction with non-expert treatment of insane persons in the District of Columbia in all classes of cases. It may be considered as part of a nationwide movement to give courts the assistance of unbiased experts who are not selected by parties to the proceeding.[5] No specific provisions in the act require the strict interpretation suggested by the government. It is inconsistent with the background and general purposes of the legislation.

■ Therefore, where the petitioner demands an examination by independent experts or, in a doubtful case, even in the absence of such a demand, it is the right of the District Court to seek the advice and assistance of the Commission on Mental Health in determining the sanity of a petitioner who seeks release from confinement on the ground that his mental health is restored.

■ The next question is whether the duty of the court to seek the recommendation of the Commission on Mental Health continues where the petitioner declines to submit to an examination by members of that body. During the proceedings below the petitioner requested that the court provide expert witnesses in his behalf *not* members of the Commission on Mental Health. In this court he repudiates the suggestion made by his own counsel that the issue of his sanity be submitted to the Commission.

The requirements of a fair hearing do not make it the duty of the court to compel a petitioner in habeas corpus to undergo a mental examination which he does not desire. The right to the relief afforded by habeas corpus is still the burden of the petitioner and should not be forced on anyone unless there is good reason for such action. For example, in an exceptional case where the record casts doubt on the judgment of those who hold the petitioner in confinement the court should compel him to undergo examination by the Commission on Mental Health. But no such circumstances exist here. It would have been better practice for the court when it denied petitioner's request for the appointment of private psychiatrists to have offered him an examination by the Commission. However, that defect in the record is cured by petitioner's insistence in this court that such relief if offered would be refused.

The order of the court below is, therefore,

Affirmed.

---

[5] A brief description of that movement is found in: George H. Dession, Psychiatry and The Conditioning of Criminal Justice, 1938, 47 Yale L.J. 319; Winfred Overholser, Ten Years of Co-operative Effort, 1938, Journal of Criminal Law and Criminology, Volume 29, page 23; Winfred Overholser, Psychiatry and the Law—Cooperators or Antagonists?, 1939, Psychiatric Quarterly, Volume 13, page 622; Sheldon Glueck, Psychiatric Examination of Persons Accused of Crime, 1926, 36 Yale L.J. 632.