## OVERHOLSER v. TREIBLY.

### No. 8850.

United States Court of Appeals
District of Columbia.

Decided Feb. 20, 1945.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and T. Peter Ansberry, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellant.

Mr. H. Eugene Bryan, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

MILLER, Associate Justice.

Charles Ellsworth Treibly, a lieutenant commander in the Navy, was placed on the retired list in November, 1922. In 1923, he was received at St. Elizabeths Hospital upon the order of the Secretary of the Navy. In 1926, he was released by an order of the District Court in a habeas corpus proceeding. This Court reversed the decision of the District Court[1]

---

[1] White v. Treibly, 57 App.D.C. 238, 19 F.2d 712.

in 1927; and Treibly was received again at St. Elizabeths upon an order of the Secretary. In January, 1944, he sought release by a petition in which he recited that he had been confined by order of the Secretary under R.S. § 4843, that he was presently of sound mind and was confined without legal justification or excuse and against his will. Again, the District Court ordered his discharge and this appeal followed.

In White v. Treibly, this Court decided that the original commitment of petitioner was authorized by the statute. This result was not modified in any way by our decision in Barry v. Hall[2] upon which he relies. There we distinguished, expressly, the commitment of civilians from the commitment of retired officers in military service. So far, therefore, as concerns the commitment under which petitioner was held, our earlier decision properly stated the law. Whatever may be necessary by way of due process for a valid commitment of a civilian, the procedure authorized by the statute was sufficient in the present case.[3]

■ This does not mean that the procedure of habeas corpus was not available to determine whether appellee's original commitment had been arbitrarily made. However, it will have served that purpose so soon as the trial judge determines whether the order of the Secretary was issued after proper inquiry. A serviceman is in a different position than a civilian in this regard. Civilians have the privilege of refusing medical treatment even when it is to their best interests. A serviceman does not have that privilege because the Military takes, not only a disciplinary interest in him, but also a paternalistic one. A very substantial part of the casualties in this war will be psychoses from the strain of battle. It is the purpose of the Army and Navy that men, suffering from mental disease, shall not be turned back into civilian life until every possible effort has been made toward their rehabilitation and cure. In this war, more than in any other, it has been recognized that people suffering from mental disease should be placed in the same category with men wounded in battle or those who become sick or disabled in the Service, from other causes. It is true that there was an ancient stigma attached to mental disease which did not attach to physical disease. One of the things we must learn as a result of this war is that there is no legitimate ground for such a stigma. No conceivable purpose would be served by a federal court's rejection of skilled military judgment on mental disease. At the end of this war, the military physicians will know more about psychosis than any other group.[3a] To repudiate their judgment in favor of civilian psychiatric testimony would create a constant interference with the process of rehabilitation. Federal courts have no such competency in judging between psychoses or between the testimony of psychiatrists to make this a useful procedure.

■ Moreover, the procedure of habeas corpus was available to appellee as a means of testing his contention that sanity had been restored, and—if so—that appellant was without authority to hold him. It is conceded by appellant that the applicable statute authorizes him to hold only insane persons.[4] If appellee were confined in a naval hospital under the supervision of naval officers, the courts would be barred from inquiring, not only concerning the treatment prescribed, no matter how long continued, but also concerning the results of the treatment and appellee's present mental condition. Appellant concedes, however, that he detains the petitioner, not by virtue of his superintendence of a naval hospital, but, instead, under a statute which authorizes detention only of *insane* persons committed by both civilian and military authorities. As the statutes make no provision for re-examination of a person committed upon order of the Secretary of the Navy or for initiation, by the person committed, of a proceeding to secure such a re-examination,[5] the rule which we have

2 68 App.D.C. 350, 98 F.2d 222.

3 See Reaves v. Ainsworth, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225; United States ex rel. French v. Weeks, 259 U. S. 326, 42 S.Ct. 505, 66 L.Ed. 965; United States ex rel. Creary v. Weeks, 259 U.S. 336, 42 S.Ct. 509, 66 L.Ed. 973; cf. Ex parte Milligan, 4 Wall. [U.S.] 2, 123, 18 L.Ed. 281.

3a Ernest E. Hadley and Others, Military Psychiatry, 7 Psychiatry: Journal of The Biology and Pathology of Interpersonal Relations 379 (November 1944).

4 24 U.S.C.A. § 191.

5 Cf. 24 U.S.C.A. § 196a: "Upon the application of the Secretary of State, the Federal Security Administrator is authorized to transfer to Saint Elizabeths Hospital, in the District of Columbia, for treatment, all American citi-

declared, recently, concerning the availability of habeas corpus to start the court's machinery in motion,[6] for that purpose, is equally applicable in the case of appellee as of a civilian. For, without such a remedy, persons committed upon order of the Secretary of the Navy as well as those adjudicated insane in a proceeding de lunatico inquirendo, might remain in confinement indefinitely, though in fact restored to sanity, with no legal means available to them for securing their discharge.[7] If appropriate legislation were enacted to correct this inadequacy[8] a remedy would thus be made available, the exhaustion of which could then, perhaps, be required before resort to the procedure of habeas corpus.[9] In the meantime, the procedure of habeas corpus makes available[10] the procedure de lunatico inquirendo or of a re-examination by the Secretary of the Navy.

 On the other hand, the issue of sanity or insanity cannot be determined on the merits in the habeas corpus proceeding, itself. As we pointed out in the Barry case,[11] such a proceeding does not provide the type of hearing necessary for that purpose. As we indicated in that case, if a

zens legally adjudged insane in the Dominion of Canada. * * * Upon the request of any such patient, his relatives or friends, he shall have a hearing in the District Court of the United States for the District of Columbia upon his mental condition and the right of the superintendent of Saint Elizabeths Hospital to hold him for treatment."

[6] Howard v. Overholser, 76 U.S.App. 166, 170, 130 F.2d 429, 433.

[7] Howard v. Overholser, 76 U.S.App. 166, 171, 130 F.2d 429, 434.

[8] D.C.Code 1940, § 21—320 could be amended by deleting part of the section as indicated by brackets in the excerpt set out below: "Any insane person who has been committed to Saint Elizabeths Hospital or any other hospital, [and who shall have been released from such hospital as improved, or who shall have been paroled from such hospital (but who shall not have been discharged as cured), and who shall have been absent from the hospital on release or parole for a period of six months or longer,] shall have the right to appear before the District Court of the United States for the District of Columbia for a hearing to determine the sanity and right to restoration to the status of a person of sound mind of said insane person by filing a petition therefor with the court upon a form to be provided by the commission for that purpose"; cf. Maine Sess. Laws (1933) c. 1, p. 114, § 440-A, providing that the Department of Public Health and Welfare shall make an examination of all patients at least once a year; Gen.Laws of Rhode Island (1938) c. 71, § 15, providing that on petition of any person confined, or on his behalf, to a justice of the supreme court, the justice of the supreme court shall issue a commission to inquire into the condition of such person; South Dakota Code (1939) § 30.0112, providing that on a verified statement in writing addressed to a county judge, any patient is entitled to have a commission of not more than three appointed by the judge to make an examination and report to the judge. The appointment of a commission shall not be oftener than once in six months; see also D.C.Code (1940) § 32—618.

[9] See In re Lancaster, 137 U.S. 393, 11 S.Ct. 117, 34 L.Ed. 713; In re Lincoln, 202 U.S. 178, 26 S.Ct. 602, 50 L. Ed. 984; Hamilton v. Henderson, 232 Mo.App. 1234, 1238, 117 S.W.2d 379, 382; In re Rainbolt, 64 Colo. 581, 172 P. 1068; State ex rel. Colvin v. Superior Court, 159 Wash. 335, 293 P. 986, 73 A.L.R. 555; Ex parte Hawk, 321 U.S. 114, 116, 64 S.Ct. 448, and cases cited; cf. Herzog v. Colpoys, —— U.S.App.D. C. ——, 143 F.2d 137; Hammond v. Hull, 76 U.S.App.D.C. 301, 303, 131 F.2d 23, 25 and cases cited at note 10.

[10] D.C.Code (1940) § 21—325: "Nothing contained in sections 21—310 to 21—318, 21—320 to 21—325 shall deprive the alleged insane person of the benefit of existing remedies to secure his release or to prove his sanity, or of any other legal remedies he may have."

[11] Barry v. Hall, 68 App.D.C. 350, 357, 98 F.2d 222, 229: "To treat such a writ of relief as a writ of original adjudication would be to deny to one confined the very type of hearing, the absence of which is the basis of relief when a writ of habeas corpus is directed to the invalidity of the original confinement, and would amount to legal condonation of the initial introduction into a mental hospital and confinement there without the statutory adjudication until the time of the habeas corpus hearing. Even though it appears factually upon a habeas corpus hearing that a petitioner is insane, nevertheless, if he has been confined under a void statute or a void proceeding, he is entitled to an order of discharge so far as his then confinement is concerned." See, Dession, Federal Treatment of Mentally Ill, 53 Yale L.J., 684, 687.

petitioner makes a sufficient showing that he was committed improperly—because the proceeding for his commitment was improper in its origin—the judge may enter an order providing for the discharge of the petitioner unless within a reasonable time a proper proceeding is initiated.[12] Similarly, the judge in such a case as the present may properly enter an order of discharge, to take effect unless within a reasonable time the Secretary of the Navy elects to re-examine the petitioner and to determine his present mental condition. If these orders for conditional discharge are properly used, petitioners may be detained for brief periods, for their own protection as well as for the protection of the public, just as in the case of one who is at large before proceedings of any kind have been commenced.[13] As we indicated in Wrobel v. Overholser,[14] if a proper proceeding de lunatico inquirendo has been initiated in the case of a civilian, but has been improperly carried out, the judge, to whom the petitioner has applied for relief by writ of habeas corpus, may direct that the original proceeding be reopened and carried forward to a proper commitment. In such a case, the procedure to determine mental capacity having been properly commenced and the equity court having taken jurisdiction of the person, he becomes a ward of the court, under the familiar doctrine of parens patriae;[15] the court then has continuing jurisdiction to reopen the matter whenever necessary;[16] the necessity—or supposed necessity—having been called to its attention by a sufficient petition for habeas corpus, the judge, to whom the petition has been presented, should proceed as was done in the Wrobel case.

We said nothing to the contrary in Howard v. Overholser or De Marcos v. Overholser. The language which we used in the former[17]—that to a person under commitment "so much by way of legal capacity must be conceded to him * * * to *start the court's machinery in motion*"—and in the latter [18]—"Habeas corpus is a proper remedy to *challenge* the continued confinement" of such a person—was based upon the inadequacy of the law of the District—failing as it does to make available to a person detained a more direct procedure—and was intended to indicate the propriety of the procedure outlined in Barry v. Hall and Wrobel **v.** Overholser. [Italics supplied]

▮ In a habeas corpus proceeding the court sits as a *court of law*[19] to determine "in a summary way" [20] whether the petitioner is unlawfully restrained of his liberty.[21] In a lunacy proceeding, on the other hand, the court sits as a court of equity to determine whether a person is sane or insane; and in so doing it is—or should be—assisted by administrative officers and experts appropriate to such a court and to such a determination.[22] In De

[12] Cf. D.C.Code (1940) § 21—310.

[13] Cf. Barry v. Hall, 68 App.D.C. 350, 358, 98 F.2d 222, 230, and authorities there cited.

[14] — U.S.App.D.C. —, 145 F.2d 859.

[15] Bliss v. Bliss, 133 Md. 61, 70, 104 A. 467, 471; Hamilton v. Traber, 78 Md. 26, 27 A. 229, 44 Am.St.Rep. 258; 3 Pomeroy, Equity Jurisprudence (4th ed. 1918) § 1311; 3 Bl.Comm. *47; In re Matter of Colah, 3 Daly [N.Y.] 529, 535, 537.

[16] Wagner v. White, 38 App.D.C. 554, 558; see D.C.Code (1940) § 21—315. Just as there is continuing supervision under the parens patriae doctrine in other similar cases: Juvenile delinquency: In re Turner, 94 Kan. 115, 145 P. 871, Ann.Cas.1916E, 1022; Ex parte Newkosky, 94 N.J.L. 314, 116 A. 716; see 38 Col.L.Rev. 1318; Probation: United States v. Murray, 275 U.S. 347, 48 S. Ct. 146, 72 L.Ed. 309; Custody and adoption of children; In re Adoption of a Minor, — U.S.App.D.C. —, 144 F.2d 644; 3 Pomeroy, Equity Jurisprudence

(4th ed. 1918) § 1304 et seq.; Administration of estates and charitable trusts: Noel v. Olds, 78 U.S.App.D.C. 155, 138 F.2d 581; Romney v. United States, 136 U.S. 1, 44, 57, 10 S.Ct. 792, 34 L.Ed. 478; 3 Bl.Comm. *427.

[17] Howard v. Overholser, 76 U.S.App. 166, 171, 130 F.2d 429, 434.

[18] De Marcos v. Overholser, 78 U.S. App.D.C. 131, 132, 137 F.2d 698, 699.

[19] Cross v. Burke, 146 U.S. 82, 88, 13 S.Ct. 22, 36 L.Ed. 896; Goldsmith v. Valentine, 36 App.D.C. 63, 66.

[20] 28 U.S.C.A. § 461.

[21] 28 U.S.C.A. § 452; Henry v. Henkel, 235 U.S. 219, 228, 35 S.Ct. 54, 59 L.Ed. 203.

[22] Cf. Goldsmith v. Valentine, 36 App. D.C. 63, 66: "It is well settled that habeas corpus is a civil, and not a criminal, proceeding, and is administered by a court of common law. Cross v. Burke, 146 U.S. 82, 13 S.Ct. 22, 36 L.Ed. 896. The custody of infants and the appointment of guardians are proper subjects of chancery jurisdiction, and the courts

Marcos v. Overholser,[23] particularly, we recognized these essential differences between the two issues and the two procedures. Thus, we noted that [1] in a habeas corpus proceeding the petitioner is not entitled to a jury trial,[24] although the Code expressly gives that right to a civilian when his mental capacity is placed in issue;[25] [2] in a habeas corpus proceeding it would be improper for a judge to require a mental examination if the petitioner does not desire it and declines to submit to such an examination,[26] although the very essence of a proceeding de lunatico inquirendo is the discovery of mental capacity or incapacity, by careful examination of the person named in the writ;[27] [3] in the exceptional case where, upon consideration of a petition for writ of habeas corpus, "the record casts doubt on the judgment of those who hold the petitioner in confinement the court should compel him to undergo examination by the Commission on Mental Health;"[28] in fact, the statute providing for that Commission was passed "in recognition of the fact that the assistance of unbiased experts was essential to assist courts in dealing with insanity cases;"[29] but the statute also provides, expressly, that the Commission's services shall be rendered in proceedings de lunatico inquirendo[30] and *"in all respects under the direction of the equity court"*;[31] hence, participation of the Commission would be improper in a habeas corpus proceeding, except for the limited purpose previously noted. [Italics supplied] Moreover, as we pointed out in the Howard case,[32] when a petition has been presented, legally sufficient on its face to start the court's machinery in motion, the judge should appoint either a guardian or counsel to represent

---

of equity generally exercise wide jurisdiction over the persons and property of infants. In habeas corpus proceedings, the court will not try the question of guardianship, or order the infant into the custody of another. Its judgment will extend only to the relief of the infant from illegal restraint; and, if the infant is competent to elect, it will allow it to exercise such right. Adams, Eq. 280; Armstrong v. Stone, 9 Grat. [Va.] 102; People ex rel. Wilcox v. Wilcox, 22 Barb.[N.Y.] 178; Foster v. Alston, 6 How. (Miss.) 406; [In] re Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L. Ed. 500. In other words, the writ of habeas corpus confers no jurisdiction upon a court of law to appoint a permanent guardian for an infant. A court of chancery is the proper tribunal for such proceeding." In re adoption of a Minor, —— U.S.App.D.C. ——, ——, ——, ——, 144 F.2d 644, 648, 650, 652 (Adoption); National Ben. Life Ins. Co. v. Shaw-Walker Co., 71 App.D.C. 276, 282, 283, 111 F.2d 497, 503–504 (Receivership); 4 Pomeroy, Equity Jurisprudence (4th ed. 1919) p. 3189, § 1330 (Receivership); Virginian Ry. v. Federation, 300 U.S. 515, 549–552.

23 78 U.S.App.D.C. 131, 137 F.2d 698.

24 See also Barry v. White, 62 App.D.C. 69, 64 F.2d 707; Barry v. Hall, 68 App.D.C. 350, 353, 98 F.2d 222, 225.

25 See D.C.Code (1940) §§ 21–312, 24–301.

26 De Marcos v. Overholser, 78 U.S. App.D.C. 131, 133, 137 F.2d 698, 700.

27 D.C.Code (1940) § 21–311: "The Commission *shall examine the alleged insane person* and any other person, in-

cluding any suggested by the alleged insane person, his relatives, friends, or representatives, whose testimony may be relevant, competent, and material upon the issue of insanity * * *"; [Italics supplied] Walsh, Procedure in Insanity Cases, 8 D.C.Bar Ass'n.J. 371; see, generally, Green, Proof of Mental Incompetency and The Unexpressed Major Premise, 53 Yale L.J. 271.

28 De Marcos v. Overholser, 78 U.S. App.D.C. 131, 133, 137 F.2d 698, 700.

29 De Marcos v. Overholser, 78 U.S. App.D.C. 131, 132, 137 F.2d 698, 699.

30 D.C.Code (1940) § 21–311: "Any petition filed in the *equity* court for a writ de lunatico inquirendo or for an order of commitment of any alleged insane person, shall be referred by the court to the Commission for report and recommendation within such time as the court may designate * * *." [Italics supplied]

31 D.C.Code (1940) §§ 21–308, 21–306, 21–307; De Marcos v. Overholser, 78 U.S.App.D.C. 131, 133, 137 F.2d 698, 700: "The Government argues that the Act creating the Commission does not authorize it to make reports and recommendations in cases where the alleged insane person has been legally committed and later seeks release on the ground of restoration of mental health. But we think this begs the question. * * * No specific provisions in the act require the strict interpretation suggested by the government. It is inconsistent with the background and general purposes of the legislation."

32 Howard v. Overholser, 76 U.S.App. D.C. 166, 170, 130 F.2d 429, 433.

the petitioner in the further stages of the proceeding. Anticipating this need, Congress provided in the District Code, for representation, in lunacy proceedings, not only of the person whose mental condition is in dispute,[33] but of those who appear as petitioners in such cases.[34]

The judgment of the District Court, accordingly, must be conformed to the procedure indicated in this opinion. Its order of discharge will be withdrawn and, if the court concludes that a sufficient showing of present sanity has been made, an order will be entered providing for appellee's discharge unless, within five days after its entry, the Secretary of the Navy directs that he be re-examined and recommitted, if found by the Secretary not to have recovered his sanity.

Reversed.

---

[33] D.C.Code (1940) § 21—311.

[34] See D.C.Code (1940) §§ 21—312, 21—310, 21—320, 21—311.