**Aaron PROCTOR, Appellant,**

**v.**

**David W. HARRIS, Appellee.**

**No. 20986.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 29, 1968.

Decided April 29, 1969.

Mr. George H. Cohen, Washington, D. C. (appointed by this court), for appellant. Mr. S. White Rhyne, Jr., Washing-

ton, D. C. (appointed by this court), also entered an appearance for appellant.

Mr. James A. Treanor, III, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER * and BURGER, Circuit Judges.

BURGER, Circuit Judge:

The Appellant has been and is confined in St. Elizabeths Hospital pursuant to a commitment under 24 D.C.CODE § 301(d) (1967) [1] following a verdict of not guilty by reason of insanity on charges of carrying a dangerous weapon and assault.

Appellant filed a petition for a writ of habeas corpus [2] alleging he had recovered, was not dangerous, and was eligible for release. He requested an independent psychiatric examination contending that he had been confined for more than nine months and had not received an independent examination. *See* Watson v. Cameron, 114 U.S.App.D.C. 151, 312 F.2d 878 (1962); De Marcos v. Overholser, 78 U.S.App.D.C. 131, 137 F. 2d 698 (1943). Appellee's response was that St. Elizabeths' staff was of the opinion that Proctor had not recovered from his "abnormal mental condition, schizophrenic reaction, chronic undifferentiated type" and that Appellee could not certify that Proctor would not be dangerous to himself or others within the foreseeable future if released, in short that he was not eligible for release.

Appellant's court-appointed counsel thereafter renewed his motion for an independent psychiatric examination and on February 3, 1967 the District Court ordered the Legal Psychiatric Service to examine Proctor and render a report within 30 days. The Court's Order also provided that a copy of the report was to be sent to counsel for Appellant. Accordingly, Dr. Donald Goldberg, a staff psychiatrist for the Service, examined Appellant and reported that in his opinion Proctor "continues to suffer from a mental disorder i. e. Schizophrenic reaction, chronic undifferentiated type in partial remission. It is also my feeling that the patient could be dangerous to himself and others if released from Saint Elizabeths Hospital at the present time".

Thereafter, in March 1967, a hearing was held on the writ and Appellant, Dr. Goldberg, and Dr. William Schwartz, a staff psychiatrist at Saint Elizabeths, testified. Essentially, Appellant testified that he was not satisfied with the treatment he was receiving at St. Elizabeths, that he was not insane, and that he would not want to hurt anybody if he were released. Dr. Goldberg was then called by the Government and reiterated the opinion expressed in his report to the Court. He also testified that he could not affirmatively predict that Proctor *would* be dangerous if released, but he was unable to certify that Proctor would not be dangerous if released. Dr. Schwartz agreed with Dr. Goldberg's characterization of Appellant's mental illness as being then substantially in remission, but as to his potential dangerousness, he believed: "He seems to have extreme passivity and assaultiveness and there doesn't seem to be much in between, so I would say it would be more

---

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

1. Section 301(d) provides:
   If any person tried upon an indictment or information for an offense, or tried in the juvenile court of the District of Columbia for an offense, is acquitted solely on the ground that he was insane at the time of its commission, the court shall order such person to be confined in a hospital for the mentally ill.

2. 24 D.C.Code § 301(g) (1967) provides:
   Nothing herein contained shall preclude a person confined under the authority of this section from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus.

   *See* Bolton v. Harris, 130 U.S.App.D.C. 1, 12, 395 F.2d 642, 653 (1968).

likely that Mr. Proctor would be dangerous than most other people".

The District Court concluded that Proctor had failed to sustain his burden of proving his eligibility for release[3] and had not shown that Appellee's failure to certify him eligible for release was arbitrary or capricious. Accordingly, the writ was discharged.

It is against this background we must examine Appellant's argument on appeal[4] which is in essence that an involuntary indigent patient seeking release from St. Elizabeths by habeas corpus does not receive adequate independent psychiatric assistance in prosecuting his petition unless he has the assistance of a "friendly" expert. He asserts that the present procedure which provides for an independent, non-partisan psychiatric examination fails to supply the Petitioner and his appointed counsel with the asset most critical to their efforts " * * namely, the assistance of a psychiatrist in preparing and presenting appellant's case at the habeas corpus proceeding." The unarticulated assumption is that since an affluent person can "shop around" until he finds a psychiatrist who tells him what he wants to hear, and then guides the lawyer in how to conduct cross-examination of other psychiatrists, the court must provide Appellant with the same kind of service.

This is not the first time that an appellate court has had to consider this sort of claim. In McGarty v. O'Brien, 188 F.2d 151, 154, 1st Cir., cert. denied, 341 U.S. 928, 71 S.Ct. 794, 95 L.Ed. 1359 (1951), the First Circuit was faced with a contention that an indigent accused had been convicted in violation of his Fourteenth Amendment due process rights when the Massachusetts courts had denied his motion that he be " 'allowed, at the expense of the Commonwealth, to employ medical experts to impartially examine him, and to be used, if necessary, as witnesses in his behalf.' " The appellant there was claiming that his right to effective assistance of counsel had been rendered illusory by the court's failure "to make available to assigned counsel such financial means as may be necessary to enable him to develop and present an appropriate defense." *Id.* 188 F.2d at 155. Recognizing that a person of modest means, though not "indigent," is also limited in his ability to marshal an entire entourage of attorneys, experts, and investigators, the First Circuit concluded it was not disposed to provide every person with these auxiliary aids so long as fundamental fairness is achieved.

The *McGarty* court hypothetically envisioned the state's obligations in a case where the independent and non-partisan psychiatric expert arrived at the same professional conclusion as the expert from the Government institution. A person with unlimited financial resources could perhaps find a favorable psychiatrist, therefore does the court have a duty to provide the indigent defendant with the means to continue to "shop" for a favorable expert? The First Circuit found no constitutional demand for such expenditures where the state had already supplied independent expert examinations. *McGarty*, 188 F.2d at 157.

This court encountered a similar problem in Naples v. United States, 113 U.S. App.D.C. 281, 307 F.2d 618 (1962). There, the defendant wanted the Government to pay the cost of a psychiatrist selected by him. We found no error in the trial court's ruling that he would not

"permit any defendant, at Government expense, to employ a psychiatrist of his own choosing, which means that a

---

3. In Bolton v. Harris, *supra* note 2, this court specifically re-evaluated and reaffirmed this allocation of the burden of proof in habeas corpus proceedings. *See* note 7 *infra*.

4. Appellant's brief in this court presents as one of the points on appeal:

1. In the interest of justice, appellant, an indigent, was entitled to Court-appointed psychiatric assistance in preparing and presenting his case in the instant habeas corpus proceeding.
Brief for Appellant at 3.

**386**

defendant can shop around for a favorable expert witness, and then have the Government pay for it. I don't consider that good administration of justice."

*Id.* at 286, 307 F.2d at 623. We see no reason to deviate from that resolution. Cf. United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct 391, 97 L.Ed. 549 (1953); State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960).

From Appellant's posture, no psychiatrist can really "assist" him adequately unless he agrees with Appellant's position. Stripped of its verbiage Appellant's position is that he is entitled to a psychiatrist sufficiently sympathetic so that he will assist counsel in preparing his case favorably to his claims, and, accordingly, in structuring cross-examination of the hospital doctors so as to neutralize their testimony. Neither sound administration, basic fairness, nor constitutional standards require such a course.

The situation would be entirely different if Appellant had been denied a meaningful hearing where he could "be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own." Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967). Appellant was granted a full and meaningful hearing. We think that the court's observations in *McGarty* are particularly appropriate here:

The [doctor] designated * * * to make the examination [is] not [a partisan] of the prosecution, though [his] fee is paid by the state, any more than is assigned counsel for the defense beholden to the prosecution merely because he is, as here, compensated by the state. Each is given a purely professional job to do—counsel to represent the defendant to the best of his ability, the designated psychiatrists impartially to examine into and report upon the mental condition of the accused.

*McGarty,* 188 F.2d at 155.

Although Appellant's brief disclaims a desire for a "psychiatric advocate," it seems clear to us that he really envisions the relationship between a petitioner and psychiatrist as analogous to that existing between petitioner and court-appointed counsel. Indeed, although Judge Bazelon seems to disclaim a desire to provide a "psychiatric advocate," he argues that the "central tenet of the adversarial process is that each side should attempt to 'neutralize' the evidence of the other side." This description of the central purpose of the adversary process has very limited application to the expert medical witness, who is, as we have noted, bound to be a neutral if he is to observe the canons of his own discipline. Under the theory of Appellant—and of the concurring opinion—reports obtained from examinations conducted by the "friendly expert" would be submitted directly to petitioner's counsel and not, as is the present practice, to the court. If counsel found the report helpful to his case he would then be free to call the psychiatrist as an expert on behalf of the petitioner, but if otherwise, not call that witness at all. We have grave doubt that physicians would relish the idea of lending themselves to any such role, demeaning both to them and their profession.

In further attempting to evaluate the position taken by Appellant, we are well aware of the rationale of our holdings relating to psychiatric assistance for involuntary indigent patients contesting confinement. In De Marcos v. Overholser, 78 U.S.App.D.C. 131, 132, 137 F. 2d 698, 699, cert. denied, 320 U.S. 785, 64 S.Ct. 157, 88 L.Ed. 472 (1943), we observed:

[T]he right to bring habeas corpus would be of little value to an indigent person unless expert testimony were available to him to rebut the opinion evidence of the staff of the institution who believed he should be continued in custody.

No careful judge is likely to assume the responsibility of allowing an al-

leged insane person to go free when the sole expert opinion in the record advises him that such a course is dangerous to the community. * * *

Therefore, where an indigent confined in a mental hospital seeks habeas corpus it is more important to provide him with an independent psychiatric *examination* than to give him independent counsel. (Emphasis added.) Our concern for expert opinion to serve as a check on other expert opinion depicts a striving to assist the Court in resolving complex and elusive issues presented in proceedings of this kind, but our holdings do not mean the process is to go on *ad infinitum;* it should not be forgotten that the 1938 legislation providing for the establishment of the Commission on Mental Health, 21 D.C.Code § 308 (1940), which was the focus of the Court's attention in De Marcos, was "part of a nationwide movement to give courts the assistance of unbiased experts who are *not selected by parties to the proceeding,*" De Marcos, *id.* at 133, 137 F.2d at 700; *cf. McGarty, supra.*

Before *De Marcos*, in the case of an indigent, the court was faced with the unsatisfactory prospect of having the staff psychiatrist of the institution in which the petitioner was confined as its only source of expert opinion evidence. To afford a reasonable check on the views of the institutional experts, the court sought to provide an expert who would *assist the court* in arriving at its determination. Appellant now suggests we traverse the full circle and make the hearing a contest of experts in which each expert seemingly owes partisan allegiance to some litigant. We reject that concept.

As noted previously, Appellant insists that his appointed expert will not be an advocate in arriving at his medical opinion, but we see no basis for assuming that one court-designated expert needs the surveillance of another psychiatrist who is thrust into what would be essentially a partisan role. *See* Lake v. Cameron, 124 U.S.App.D.C. 264, 364 F. 2d 657 (1966). Such a course would deprive the court of the very resource which our decisions in De Marcos, supra and Watson v. Cameron, 114 U.S.App. D.C. 151, 312 F.2d 878 (1962), sought to provide.[5]

■■ The question whether an independent psychiatrist or a hospital staff psychiatrist should "cooperate" with counsel for one who is confined depends on who provides the definition of "cooperate". We have no occasion to doubt that the expert will do his utmost and exercise the best judgment of which he is capable in aiding the court. By the same token we can expect that he will assist counsel by making available relevant medical and technical information, deemed by him to be reliable and pertinent in his discipline so that the views of other experts may be tested in cross-examination. Such techniques by themselves and through the process of illumination comprise a basis upon which aid to the court may rest. If "cooperation" is thus achieved, no more need be asked. But the fact remains that psychiatrists are physicians, not advocates;[6] nevertheless, when they express views which are not in accord with those harbored by the confined patient or his counsel, there is a partisan tendency to regard such an expert as an adversary. It is absurd to suggest that Government psychiatrists are "uncooperative" in this context; we can readily take judicial notice that over a dozen years or more the medical views of these Government psychiatrists, as a

---

5. Notwithstanding some dicta indications to the contrary in Thornton v. Corcoran, 132 U.S.App.D.C. ——, 407 F.2d 695 (Jan. 3, 1969), in Lake v. Cameron, 124 U.S. App.D.C. 264, 268, 270, 364 F.2d 657, 661, 663 (1966), both the majority and dissenting opinions recognized that "[p]roceedings involving the care and treatment of the mentally ill are not strictly adversary proceedings." (maj. opin. per Bazelon, C. J.) *See* note 7 *infra.*

6. For this court's articulation of the proper role of the expert psychiatric witness at trial, *see* Washington v. United States, 129 U.S.App.D.C. 29, 390 F.2d 444 (1967).

whole, generally turned out to be more favorable to defendants than to prosecutors in verdicts of not guilty by reason of insanity. In observing this we do so to acknowledge, and not in any sense to challenge, their independent stance as professional people.

This record totally fails to support the idea that Appellant was denied any relevant information or other legitimate assistance from government employed psychiatrists.[7] If Appellant seeks the aid of a psychiatrist to act in any capacity other than as an independent professional person whose function is to aid the trier of the issues, we are not prepared to oblige him.

Affirmed.

BAZELON, Chief Judge (concurring):

A psychiatrist may play several roles in a habeas corpus proceeding initiated by a patient committed under 24 D.C. Code § 301(d) (1967). The failure of the majority to distinguish among these roles produces needless confusion concerning the claims of the appellant in this case and the proper resolution of the issues presented.

First, and most obviously, the psychiatrist may examine the petitioner, report to the court and testify concerning his conclusions. In this role, the psychiatrist whether hired by the patient, appointed by the court or employed by Saint Elizabeths Hospital is by oath impartial. The majority merely states the obvious when it concludes that the appel-

lant cannot claim a right to favorable testimony from a "friendly" expert.

The uncertainty surrounding the diagnosis of and prognosis for mental illness is such that an affluent patient able to finance a thorough search may likely find an expert whose honest testimony will be favorable to his cause. But despite the suspicion with which the law views distinctions based upon wealth in court proceedings, it has not yet been found practicable to assure the indigent patient the same scope for psychiatrist-shopping that the rich patient enjoys. The indigent patient may perhaps claim some voice in the choice of an independent expert who is qualified and impartial; as the majority points out, the appellant cannot demand an expert who "agrees" with him.

But this is not the appellant's request; his counsel in fact explicitly refuses to roost upon this straw man erected by the majority. Mr. Proctor claims a right not to the favorable testimony of a psychiatrist, but to the assistance of a psychiatrist in preparing his case.

A psychiatrist plays quite different roles in testifying and in providing assistance off the witness stand to a patient seeking release. Testimony should ring clear and true. But the premise of our law is that truth is best insured by an adversarial struggle. Because this is so, the majority enters quite another realm when it slides from the self-obvious proposition that the appellant is not entitled to the favorable testimony of a psychiatrist to the quite different conclusion that "neither sound administra-

7. That the confining institution must make its records available to the court and otherwise cooperate in providing information about the patient was made clear in our opinion in Bolton v. Harris, *supra* note 2, 130 U.S.App.D.C. at 12, 395 F.2d at 653, where we explained:

But the traditional rule in habeas corpus proceedings is that the petitioner must prove, by the preponderance of the evidence, that his detention is illegal. [Footnote omitted] We conclude that the traditional rule should apply, particularly since *we have previ-*

*ously held that the hospital must assist the court in acquiring all the relevant information on the patient's condition, treatment, etc.*[64] (Emphasis added.)

64. Lake v. Cameron, *supra* note 61, 124 U.S.App.D.C. at 268, 364 F.2d at 661. The court made clear that "[p]roceedings involving the care and treatment of the mentally ill are not strictly adversary proceedings." *Ibid.* Thus technical rules as to who has the burden of bringing relevant evidence to the attention of court [sic] do not apply.

tion, basic fairness nor contitutional standards" may entitle the appellant and his appointed counsel to assistance from a qualified psychiatrist "in structuring cross-examination of the hospital doctors so as to neutralize their testimony."

The central tenet of the adversarial process is that each side should attempt to "neutralize" the evidence of the other side. That purpose alone explains the right to confrontation and cross-examination. The majority opinion suggests that the impartiality of the hopsital psychiatrist all but obviates the need for effective cross-examination. This argument might be valid if our only concern were the possibility of bias or bad faith. But the right to cross-examination serves broader needs. The direct testimony of even an impartial expert may be, however unintentionally, incomplete or otherwise misleading to a fact-finder unversed in psychiatry. The risk is multiplied by the fact that a Government attorney elicits this direct testimony. It is unnecessary to accuse either the neutral psychiatrist or the Government attorney of bad faith in order to conclude that vigorous cross-examination is essential to provide the fullest and most balanced presentation to the fact-finder.

The appointment of counsel, while not a matter of constitutional right in habeas corpus proceedings,[1] is appropriate and necessary "where a petition * * presents a triable issue of fact the clear presentation of which requires an ability to organize factual data or to call witnesses and elicit testimony in a logical fashion * * *." United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 715 (2d Cir. 1960). In addition to structuring the petitioner's affirmative case, a lawyer is also necessary to conduct the effective cross-examination which can "neutralize" opposing witnesses.

But if an indigent patient needs and is entitled to a lawyer, far more may he also need the assistance of a psychiatrist in the preparation of his case. This court has often pointed out the difficulty a lawyer untutored in the arcane mysteries of psychiatry may encounter when appointed to represent an indigent who is mentally disturbed.[2] If the attorney is cut off from all sources of expert assistance on these matters, the patient may be effectively denied his right to an adversarial determination of his mental health and likely dangerousness.

It is, however, far easier to announce the principle that an indigent patient and his attorney are entitled to some psychiatric assistance preparing for and participating in an adversarial hearing than to map out a workable means to implement the right. This Court pointed out in Thornton v. Corcoran, supra, the duty of the professional staff at Saint Elizabeths Hospital to cooperate with counsel appointed to represent indigent patients. It seems even more clear that a psychiatrist appointed to conduct an independent examination should also be available for consultation by appointed counsel.

An independent psychiatrist rendering such assistance must of course distinguish scrupulously between his role as an impartial expert in reporting to the court and testifying, and his role as an adviser on psychiatric matters for the patient's counsel. Delicate questions will, of course, arise. But an independent psychiatrist could, it would seem, advise an attorney of the nature of his indigent client's mental abnormalities, the degree of uncertainty surrounding diagnoses of this sort of illness, and the

1. *See* Brown v. Cameron, 122 U.S.App. D.C. 297, 298 n. 1, 353 F.2d 835, 836 n. 1 (1965); Dorsey v. Gill, 80 U.S.App. D.C. 9, 29, 148 F.2d 857, 877, cert. denied, 325 U.S. 890, 65 S.Ct. 1580, 89 L. Ed. 2003 (1945); *but see* Roach v. Bennett, 392 F.2d 743, 748 (8th Cir. 1968).

2. *See* Thornton v. Corcoran, 132 U.S.App. D.C. 232, 238, 407 F.2d 695, 701 (January 3, 1969); Henderson v. United States, 123 U.S.App.D.C. 380, 385, 360 F.2d 514, 518–19 (1966) (concurring opinion); Rollerson v. United States, 119 U.S.App.D.C. 400, 406, 343 F.2d 269, 274–275 (1964); Jackson v. United States, 118 U.S.App.D.C. 341, 346, 336 F.2d 579, 584 (1964).

lines of inquiry which might best help his client.

The record in this case does not demonstrate that the appointed psychiatrist, or for that matter the hospital doctors themselves, refused to cooperate with the appointed counsel for the appellant. Consequently, I can not conclude that the appellant has shown a denial of the sort of psychiatric assistance in the preparation of his case to which he is entitled. Accordingly, I concur in the result reached by the majority.