**UNITED STATES of America**

v.

**Oliver H. FOOKS, Jr.**

**Cr. No. 822–53.**

United States District Court
District of Columbia.

June 23, 1955.

C. Frank Reifsnyder, Washington, D. C., for defendant.

Leo A. Rover, U. S. Atty., Edward P. Troxell, Asst. U. S. Atty., Washington, D. C., for Government.

KEECH, District Judge.

This case is before the court on a hearing to determine the mental competency of the defendant, Oliver H. Fooks, Jr., to stand trial herein on June 8, 9, 10, and 11, 1953, the Attorney General having transmitted to the Court on November 4, 1954, the certificate of the Director of the Bureau of Prisons and the report of the Board of Examiners at the Medical Center for Federal Prisoners at Springfield, Missouri, dated September 24, 1954, that there is probable cause to believe that defendant was mentally incompetent at the time of his trial herein, as provided by 18 U.S.C. § 4245.

The defendant was arrested on February 12, 1953, and charged with several serious offenses, for which he was later indicted. In the first of the three cases in which defendant was convicted, Criminal No. 445–53, he was tried on a charge of assault with a dangerous weapon in April, 1953, before Judge Schweinhaut and a jury, found guilty as indicted, and sentenced on May 15, 1953, to serve from three to nine years. In the second case, Criminal No. 822–53, he was tried on a charge of rape and robbery on June 8 through 11, 1953, before this court and a jury, found guilty of assault with intent to commit rape and of robbery, and sentenced on June 26, 1953, to serve from five to fifteen years. In the third

case, Criminal No. 447–53, the defendant was tried on another charge of rape before Judge Letts and a jury on October 14 through 21, 1953, convicted of assault with intent to commit rape, and sentenced on November 13, 1953, to serve from five to fifteen years. The three sentences were imposed to run consecutively.

In Criminal No. 447–53 the defendant noted an appeal to the United States Court of Appeals for the District of Columbia, which appointed defendant's present counsel to represent him. On March 11, 1955, the Court of Appeals remanded that case to the District Court with directions to vacate the sentence and to hold a hearing on the issue of the mental competency of defendant at the time of his trial. On the same date the Court of Appeals, upon consideration of a motion by defendant to remand the instant case, Criminal No. 822–53, to the United States District Court, the only pleading pending before the Court of Appeals being a petition for leave to prosecute an appeal in forma pauperis, entered an order denying that petition, in order that the District Court might take similar action in Criminal No. 822–53 to that to be taken on remand of Criminal No. 447–53.

At the request of counsel for the defendant, with the acquiescence of the United States Attorney, and in the interest of conserving the time of court, counsel, and witnesses, most of whom were physicians called from Atlanta Penitentiary and Springfield Medical Center, as well as in the interest of the defendant, it was agreed by Judge Schweinhaut and this court that Criminal Nos. 445–53 and 822–53 should be consolidated for the purpose of the hearing on mental competency only, each of the two judges sitting to determine his case independently of the other.

The defendant was confined at the District of Columbia Jail from shortly after his arrest until January 20, 1954, when he was transferred to Atlanta Penitentiary. On March 11, 1954, he was certified as psychotic by the Board of Examiners at Atlanta, who recommended his transfer to the Medical Center at Springfield, Missouri, stating their opinion that he had been psychotic for several years. This was done on April 20, 1954. On September 24, 1954, the Springfield Board of Examiners found the defendant to be presently psychotic and expressed the opinion that his confused delusional thinking had caused him to be incapable of cooperating properly with counsel during his various trials.

The hearing on the issue of defendant's mental competency to stand trial in April and June, 1953, has consumed most of five court days, during which a number of witnesses have been called both on behalf of the defendant and the Government.

On behalf of the Government, there appeared the two police officers who arrested defendant on February 12, 1953, and were with him much of the time until noon of February 13, detective sergeants of fourteen and sixteen years' experience on the Metropolitan Police Force; the lieutenant in command of the Sex Squad, a police officer for fifteen years, who observed and talked with defendant on February 13; the detective sergeant who questioned defendant for several hours and made a polygraph test on February 12 and 13; and Dr. Amino Perretti, then Assistant Chief Psychiatrist of District of Columbia General Hospital, who, at the request of the United States Attorney, made a psychiatric examination of defendant while he was confined at the Jail, interviewing him on April 19 and 26 and May 5 and 11, 1953, and on May 12, 1953, reported defendant to be of sound mind. The Government introduced in evidence transcripts of defendant's testimony in Criminal Nos. 445–53 and 822–53, as well as a protracted bench conference in which defendant himself participated in the latter case.

On behalf of the defendant, there appeared Dr. Richard Wilson, Consultant in Neuropsychiatry at Atlanta Penitentiary, and Dr. Carl I. Pirkle, Chief Medical Officer at Atlanta, both members of the Atlanta Board of Examiners, who examined defendant on March 11, 1954;

Dr. E. C. Rinck, Medical Director at Springfield Medical Center, and Dr. Charles E. Smith, Medical Director and chief of psychiatric service at that institution, both members of the Springfield Board, who examined defendant on September 24, 1954. Defendant Fooks also testified.

The witnesses were fully examined, cross-examined, and answered questions put by the two judges sitting.

Counsel argued two legal questions in connection with the hearing: first, whether defendant or the Government bears the burden of proof at a hearing under 18 U.S.C. § 4245 and, if so, what degree of proof is required; and second, what test of competency should be used by the court in a proceeding of this type.

■ As to the first question, it is the view of this court that a hearing under 18 U.S.C. § 4245 is analogous to the raising of the issue of competency to stand trial by a petition for writ of habeas corpus or by a motion under 28 U.S.C. § 2255. In connection with such a motion, our Court of Appeals has recently stated in Bishop v. United States, D.C.Cir., 223 F.2d 582:

> "The burden of proof [is] upon * * * the movant. It is well established that the movant in a collateral attack upon a judgment * * undertakes a severe burden."

■ As to the second question, the test of competency is laid down by the statute. Section 4245 provides that upon forwarding of the Board of Examiners' report by the Attorney General "the court shall hold a hearing to determine the mental competency of the accused *in accordance with the provisions of section 4244* * * *."* The latter section provides for judicial determination of competency before trial where the United States Attorney has reasonable cause to believe that a person charged "may be presently insane or otherwise *so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense*".

This same test of mental competency to stand trial was applied by the Court of Appeals in the Bishop case, supra.

■ In the instant case, even *assuming* the burden of proof is upon the Government and that it must prove defendant's sanity at the time of trial beyond a reasonable doubt, this court has no doubt and finds that the defendant at the time of trial was mentally competent to understand the nature of the proceedings against him and did understand them, and was mentally competent to assist properly in his defense and, in fact, did properly and intelligently assist counsel in his defense. The court bases its finding on:

1. The testimony of experienced officers who arrested defendant, were with him for hours, talked with him, questioned him, and heard him talking with others on that occasion, and also observed defendant's behavior at his trials.

2. The sole psychiatric examination of defendant during the period he was confined at the District Jail awaiting trial, made by Doctor Perretti on April 19 and 26 and May 5 and 11, 1953, which resulted in an opinion rendered May 12, 1953, that defendant was of sound mind.

3. The transcripts of defendant's own testimony at the trials in Criminal Nos. 445–53 and 822–53, and the protracted bench conference in Criminal No. 822–53, in which defendant actively participated with court and counsel, with a view to getting his case in order for trial.

4. The testimony of Dr. Wilson and Dr. Pirkle that the transcripts of defendant's testimony in April and June, 1953, impressed them as that of a man who was able to understand the charges against him and to advise properly with counsel, and the statement of Dr. Wilson that he found nothing in the testimony suggesting a diagnosis of paranoid schizophrenia.

5. The fact that the portions of the transcripts which Dr. Smith and Dr. Pirkle pointed out as indicative of abnormal thinking were susceptible of a

rational explanation in view of the defendant's circumstances, particularly under the facts of these cases.

6. The court's own clear recollection of defendant and his actions and manner of testifying at the time of the trial.

7. The fact that three judges, experienced in presiding at criminal trials, each observed defendant while on trial for several days before him, and saw no such indication of mental incompetency as to cause the court to order a mental examination pursuant to 18 U.S.C. § 4244.

8. The fact that two different defense attorneys, experienced in criminal trials, represented defendant in two different capital cases in June and October, 1953, yet did not defend on the ground of insanity or even move for a mental examination, although the Government had on April 2, 1953, filed and withdrawn a motion for mental examination.

9. The testimony of the psychiatrists that the conclusion in the Atlanta and Springfield reports that defendant was mentally incompetent at the time of trial meant an *opinion* that he was *probably* psychotic at that time, that their individual opinions were based in part upon a review of the summary of defendant's history which had been furnished to them, and that their examinations of defendant were made in the light of that summary.

10. The fact that much of this history was based upon defendant's own statements, and at least one statement therein which supported a finding that defendant's symptoms related back to the time of trial (that on or about May 20, 1953, he was committed to a mental hospital in Washington, D. C., for psychiatric study) is conceded by both counsel to be without foundation in fact.

11. The testimony of the psychiatrists that the onset of paranoid schizophrenia, the diagnosis of defendant's present mental illness, is gradual and insidious, and that no one can positively say at what point it develops into a psychosis.

12. The testimony of the psychiatrists that in the episodic type of schizophrenia there are so-called "lucid" intervals or periods when the symptoms are in remission and the patient appears to react normally.

13. The testimony of Dr. Wilson, supported by that of the other psychiatrists, that the defendant Fooks has suffered psychotic *episodes*.

14. The testimony of Dr. Wilson and Dr. Pirkle that they could not express an opinion as to whether defendant in April and June, 1953, was competent to understand the proceedings against him or properly advise with counsel in his defense, and Dr. Rinck's equivocal answers when questioned on this point.

15. The fact that all the expert witnesses who expressed an opinion that defendant probably was mentally incompetent at the time of trial had no contact with the defendant until months after the trial, when he had undergone the stress of three convictions and sentences totalling a maximum of thirty-nine years.

16. The unanimous testimony of the witnesses who had seen defendant in February, April, May, and June, 1953, including a competent psychiatrist, that defendant appeared mentally competent during that time.

17. The testimony of all the psychiatrists that a competent psychiatrist who observed defendant at the time of his trial would be in a better position to evaluate his mental state at the time of trial, than one who judged defendant's mental competency to stand trial from an examination made some time later, plus a review of defendant's history.

It is the view of this court that *assuming* plaintiff's present mental illness had its roots in events which transpired prior to the trial herein, at the time of that trial his mental illness had not reached such a stage as to render him incompetent to stand trial.

Therefore, treating the present proceeding as a motion to vacate the judgment and sentence on the ground of

mental incompetency of the defendant at the time of trial, the court will deny the motion.

Counsel for the Government will submit promptly appropriate findings of fact, conclusions of law, and order.