Oliver H. **FOOKS, Jr.,** Appellant,

v.

**UNITED STATES** of America,
Appellee.

**Nos. 12998–13000.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 26, 1956.

Decided July 12, 1956.

Petition for Rehearing En Banc Denied
March 28, 1957.

Statements in Relation to Petition for
Rehearing En Banc
June 13, 1957.

Mr. C. Frank Reifsnyder (appointed by the District Court), Washington, D. C., for appellant.

Mr. E. Tillman Stirling, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Edward P. Troxell, Principal Asst. U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief for appellee. Mr. Leo A. Rover, U. S. Atty., at the time record was filed, also entered an appearance for appellee.

Before WILBUR K. MILLER, BASTIAN and BURGER, Circuit Judges.

PER CURIAM.

In these cases, after intermediate proceedings not necessary to be detailed here, the appellant was granted hearings before the three District Court Judges who had presided at three separate trials in which appellant had been convicted of (1) assault with a dangerous weapon; (2) assault with intent to commit rape; and (3) another assault with intent to commit rape. The hearings so conducted were under 18 U.S.C. § 4245, to determine appellant's competency at the time of his several trials.[1]

After extensive testimony was taken, covering in all some eight trial days, in separate findings each of the three judges found that appellant was mentally competent to understand the charges against him and properly assist in his defense at the time he was tried, and that appellant was mentally competent when he was sentenced. Two of the District Judges specifically ruled that, even if the Government had the burden of establishing such competency beyond a reasonable doubt, as to which we now express no opinion, it had carried that burden; and it is fairly inferable that the third District Judge, who, by consent, heard the testimony

1. By consent of the defendant and the Government, the District Judges who tried cases No. 12,998 and No. 12,999 heard the evidence while sitting together. The judge who tried case No. 13,000 conducted a separate hearing.

with one of the other judges, did likewise.

We think the findings of the trial judges were clearly correct and the judgments appealed from are

Affirmed.

## On Rehearing in Banc.

Before EDGERTON, Chief Judge, PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, in Chambers.

### PER CURIAM.

Upon consideration of appellant's petition for a rehearing in banc, it is

Ordered by the Court that the aforesaid petition be, and it is hereby, denied.

Each Judge reserves the right to file a statement of his views.

Chief Judge EDGERTON and Circuit Judges BAZELON, FAHY and WASHINGTON would grant the petition for rehearing in banc.

Statements of the Majority and of the Minority of the Court in relation to Petition for Rehearing En Banc.

BURGER, Circuit Judge, with whom Judges PRETTYMAN, WILBUR K. MILLER, DANAHER and BASTIAN concur: This statement is filed pursuant to our order of March 28, 1957, which denied appellant's petition for a rehearing en banc. It is occasioned by Judge Bazelon's comments in support of his vote. We voted against granting a rehearing en banc after an exhaustive reexamination of the entire transcript which confirmed our prior conclusion that the hearings held by the trial court

were not prejudicial, and the findings were supported by substantial evidence and thus were not clearly erroneous.

A brief summary of the facts in the record will aid in keeping the real issues in perspective: appellant was indicted three times in 1953 for three separate and distinct offenses committed at different times. After three separate trials before three different judges, appellant was convicted and sentenced on each charge. The three separate sentences imposed on appellant are therefore not "consecutive" in the sense that our opinions usually use that term. They are three unrelated sentences for three unrelated convictions and, of course, they must all be served.

Observation of appellant while confined led government custodial authorities to question his mental condition. Pursuant to 18 U.S.C. § 4245 a certificate was issued noting probable cause to believe that appellant was incompetent at the time of his trials. The same judges who had presided at his three trials conducted hearings [1] for the purpose of determining whether or not he was sufficiently competent at the time of his trials to understand the proceedings and assist in his defense. At these hearings, each of which lasted several days,[2] the issue of appellant's mental competency was thoroughly examined. There was testimony by several psychiatrists, including the doctors who examined appellant while he was imprisoned and who issued the report certifying that there was probable cause to believe appellant was incompetent when tried and convicted. A government psychiatrist from D. C. General Hospital testified to the contrary [3] on the basis

---

1. The certificate issued by the Director of the Bureau of Prisons applied to all three convictions and thus, pursuant to 18 U.S.C. § 4245, each of the trial judges was required to hold a hearing. The hearing in case No. 13,000, however, was directed by an order of this court (dated March 11, 1955).

2. Actually only two hearings were held. A combined hearing was held by the two trial judges in cases 12,998 and 12,999,

which consumed about five days of trial time. The subsequent hearing before the trial judge in case 13,000 lasted two and one-half days.

3. Dr. Perretti examined appellant four times in 1953, i. e., April 19, April 26, May 5 and May 11. Appellant's three trials resulted in convictions on April 22, June 11 and October 21 of 1953. Thus, appellant was examined shortly before and immediately after his first trial.

of his examinations of appellant shortly before the three trials. Confronted with a genuine conflict in the testimony of government psychiatrists, the trial judges allowed cross-examination by both the United States Attorney and appellant's counsel, and the judges questioned the witnesses rather extensively.[4] In addition several police officers testified concerning appellant's actions and demeanor preceding and during the trials and portions of Fooks' testimony at his trials were read into the record. Appellant also testified upon request of his counsel. In short, these hearings followed the normal pattern of a judicial inquiry where it is necessary to resolve a disputed fact.

Each of the three trial judges, at the conclusion of these hearings, found that appellant had been legally competent to stand trial. This court affirmed those findings in a per curiam opinion.[5]

In the statement filed by Judge Bazelon it is urged a rehearing is necessary since the hearings, as conducted, distorted the fundamental scheme and defeated the purpose of section 4245. This conclusion rests on an assumption that the Prison Director's certificate was denied prima facie effect because (1) the trial judges "imposed" upon appellant the burden of going forward with the evidence and (2) the trial judges permitted Fooks to testify in his own behalf at the request of his counsel. The purpose of this statement is to demonstrate, by explicit references to the record, that the assumption on which the conclusion rests is incorrect.

It is necessary in evaluating the objections to understand first the purpose and effect of section 4245, and second what actually took place before and during the instant hearings. Section 4245 was designed to prescribe a uniform procedure for what amounts to a "nunc pro tunc" determination of a convicted defendant's mental competency at the time of trial where this issue "was not raised and determined before or during * * * trial."[6] The section provides that upon receipt of a certificate from the Director of the Bureau of Prisons

---

4. It is of special significance that two of the District Judges, upon learning that medical experts who thought in 1954 that appellant was not competent to stand trial in 1953 had never examined the transcript of appellant's testimony given at the trial, allowed Drs. Wilson and Pirkle to examine the transcripts during a hearing recess. Both doctors subsequently testified that it appeared from the testimony that appellant understood the nature of the proceedings during the period when he was being tried. Record, pp. 224–225, 240–242 (cases 12,998 and 12,999). Judge Bazelon's memorandum does not deal with this aspect of the evidence.

5. Judge Bazelon is correct in stating the opinion of the panel was "silent" on questions now urged as error. The reason is that these points were neither raised nor preserved at the hearings, nor argued on appeal. It is not the appellate function to search the record in order to answer every conceivable argument counsel might have raised if they had occurred to him or if he had considered them error.

6. Section 4245 of 18 U.S.C. provides:
"Whenever the Director of the Bureau of Prisons shall certify that a person convicted of an offense against the United States has been examined by the board of examiners referred to in title 18, United States Code, section 4241, and that there is probable cause to believe that such person was mentally incompetent at the time of his trial, provided the issue of mental competency was not raised and determined before or during said trial, the Attorney General shall transmit the report of the board of examiners and the certificate of the Director of the Bureau of Prisons to the clerk of the district court wherein the conviction was had. Whereupon the court shall hold a hearing to determine the mental competency of the accused in accordance with the provisions of section 4244 above, and with all the powers therein granted. In such hearing the certificate of the Director of the Bureau of Prisons shall be prima facie evidence of the facts and conclusions certified therein. If the court shall find that the accused was mentally incompetent at the time of his trial, the court shall vacate the judgment of conviction and grant a new trial. Added Sept. 7, 1949, c. 535, § 1, 63 Stat. 686."

stating there is probable cause to believe the prisoner was mentally incompetent when tried, the court before whom the defendant was convicted must hold a hearing. The sole purpose of the inquiry is to obtain a judicial determination of the prisoner's "mental competency" as of the time he was tried. The statutory test of "incompetency" is not that used to determine "legal insanity," but rather whether the accused was "unable to understand the proceedings against him or properly * * * assist in his own defense * * *." The court is required to vacate the conviction and grant a new trial if it finds the prisoner was, in that sense, "incompetent" to stand trial.

The hearing required by section 4245 is to be held "in accordance with the provisions of section 4244." [7] The latter section directs the trial court to hold a hearing "at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist." Section 4244 lends no support to the contention that the section 4245 hearing should be conducted in some manner other than that followed in the usual judicial proceeding. Section 4245 provides further: "In such hearing the certificate of the Director of the Bureau of Prisons shall be prima facie evidence of the facts and conclusions certified therein."

■ It is apparent that the certificate, properly considered as one of the elements in a statutory scheme to determine mental competency, serves several functions: (1) it represents a medical opinion that there is *probable cause to believe* the prisoner was mentally incompetent when tried; (2) it operates as a pleading insofar as it *requires* a hearing on the issue of mental competency at the time of trial; (3) it *creates* a rebuttable presumption of mental incompetency which, absent competent evidence

to the contrary, controls the judicial determination.

■ The effect, then, of the certificate is to compel a hearing in which there is a working assumption of incompetency rather than competency. However, when evidence which would justify a finding of competency has been produced, "the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor. Its only office is to control the result where there is an entire lack of competent evidence." Del Vecchio v. Bowers, 1935, 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229.

It is erroneous to intimate that the rebuttable presumption created by the certificate places a burden of proof upon the United States Attorney or that it elevates the certificate to some independent evidentiary stature. The questions of who carries the burden of proof and the degree of probative force which the certificate retains as evidence are governed by considerations foreign to the concept of "prima facie evidence." It is unnecessary to resolve these problems as the rulings on the point in the instant hearings were favorable to appellant. The court, in case 13,000, after hearing oral argument on the issue of burden of proof, held the burden to be on the Government. In the combined hearing involving cases 12,998 and 12,999, Judge Keech declared: "In the instant case, even *assuming* the burden of proof is upon the Government and that it must prove defendant's sanity at the time of trial beyond a reasonable doubt, this court has no doubt and finds that the defendant at the time of trial was mentally competent * * *." United States v. Fooks, D.C.D.C.1955, 132 F.Supp. 533, 535. The certificate itself was a part of the record and was called to the court's attention even before the hearings commenced.[8] The entire report of the Board

7. Section 4244 "formalizes the court procedure for accused persons whose mentality comes under suspicion [before or during the trial] by providing for a psychiatric examination, report thereof to the court, hearing upon notice and a judicial finding." H.R.Rep. No. 1319, 2 U.S.Code Cong.Service 1949, p. 1928.

8. Record, p. 487 (cases 12,998 and 12,999); p. 330 (case 13,000).

of Examiners at the Springfield Medical Center, Springfield, Missouri, incorporated in the certificate, was accepted in evidence in both hearings when it was offered.[9] This report was paraphrased several times and portions were read verbatim during the course of both hearings.[10]

■ We find no quarrel with the suggestion that the party challenging the presumption has the burden of going forward with the evidence. See Western & Atlantic R. R. v. Henderson, 1929, 279 U.S. 639, 642, 49 S.Ct. 445, 73 L.Ed. 884. The better practice in section 4245 hearings would be for the District Court to have the certificate formally offered at the opening and then call upon the United States Attorney to produce such evidence as he might have, if any, which would meet or rebut the presumption of incompetency. This procedure will ensure technical compliance with the statute. However it does not follow that the certificate is "deprived" of its prima facie effect whenever there occurs a deviation from the desired norm. In determining this question it is necessary to look to the substance of the proceedings as well as to the form.

At the instant hearings the trial judges did not "impose" upon Fooks the burden of going forward. Counsel for Fooks did not request, at either of the hearings, a ruling on order of proof.

On the contrary, the record is clear that at the outset of each hearing appellant's counsel volunteered to go forward with his evidence. Counsel's statement at the second hearing emphasizes this fact: "If Your Honor please, preliminarily, may I say that the statute, in my opinion, does not indicate who has either the burden of going forward or the burden of proof. I assumed at a previous hearing held before other judges of this court recently the burden of going forward. I am willing to do that here, if that is Your Honor's desire, but I would like to state that that is without objection or without qualification to my being able to argue the burden of proof question at such time as it may be material." [11]

The record substantiates counsel's and the courts' judgment that it was proper for appellant to proceed since it was perfectly apparent to everyone that the United States Attorney possessed evidence in the form of four psychiatric examinations of Fooks just before trial, which would tend to meet and rebut the prima facie effect of the certificate. Prior to the commencement of the hearings the United States Attorney had informed appellant's counsel that Dr. Perretti had examined Fooks in April and May of 1953, and had written the United States Attorney that in his opinion Fooks was mentally competent to stand trial. Counsel immediately notified the court [12]

9. At the earlier combined hearing appellant's counsel indicated several times that he did not intend to offer the Springfield Report as evidence until *after* the Springfield psychiatrists had completed their testimony. On these occasions Judge Schweinhaut declared he would not admit the report. Record, pp. 115–116, 434–439 (cases 12,998 and 12,999). It is obvious the trial judge made this statement only because he felt the report could not be used to *add to* the testimony of the doctors who made the report. Thereafter, at the suggestion of Judge Keech, the substance of the report went into the record. Record, pp. 115–125. Both judges, however, received the report as evidence. Record, pp. 477–478.
   In the second hearing the Springfield Report was received when offered as evidence. Record, p. 109 (case 13,000).

10. See, e. g., Record, pp. 119, 135, 260–272, 360–368 (cases 12,998 and 12,999); Record, pp. 44–45, 53, 104–108 (case 13,000).

11. Record, pp. 5–6 (case 13,000).
    At the first hearing, following the court's refusal to vacate Fooks' sentence prior to a judicial determination of incompetency, counsel declared: "If I may address the Court with respect to procedure, the statute is silent as to who is the moving party. I had reached that conclusion independently of consultation with Your Honors, but I thought I better raise the point." Judge Keech replied: "There has been no consultation, but I think it is proper for you to proceed." Record, p. 7 (cases 12,998 and 12,999).

12. Record, pp. 332–333, 362, 367 (case 13,000); Record, pp. 496, 546 (cases 12,998 and 12,999).

of this fact and moved under Rule 17(b), Fed.Rules Crim.Proc. 18 U.S.C., that subpoenas issue for the doctors who had signed the Springfield report finding probable cause to believe that Fooks was incompetent when tried. Preliminary hearings were held on these motions at which appellant's counsel argued that the conflicting medical testimony (of Government psychiatrists at Springfield and St. Elizabeths) "raises a square factual issue," or "a question of the weight of the evidence." [13] Subsequently, when the combined hearing in cases 12,998 and 12,999 began, counsel reiterated at the very outset the obvious fact that the hearing involved a flat contradiction of medical opinion.[14] It is clear that whatever the order of proof the United States Attorney was prepared to meet the presumption; nothing could be plainer than that Dr. Perretti's opinion as known to both counsel and the Judges, when given, would rebut the statutory effect of the certificate.[15]

Judge Bazelon now suggests that it is reversible error if the court does not strictly adhere to procedural niceties and rigid forms. The most that can be said for this view is that Dr. Perretti and the other government witnesses should have been called first. But no one can read Dr. Perretti's testimony and come to any conclusion except that, had it been offered first, it would have operated to meet the presumption arising from the certificate. The sole object of these hearings was to determine the mental competency of the prisoner at the time of trial. This was accomplished even though appellant took the initiative which in no significant sense deprived the certificate of its technical prima facie effect.

The record reveals that appellant could not possibly have been prejudiced by the order in which the proof was adduced. The suggestion in the dissenting statement that had the United States Attorney been required to go forward "the *prosecutor* might have called the prison doctors" (emphasis added) seems to us to ignore the record. The United States Attorney had stated that he was prepared to rest his case on the testimony of Dr. Perretti. He made it very clear before the hearings began that he did not intend to call the Springfield doctors as witnesses.[16] Prior to the hearings and before any question as to the order of proof could conceivably have been raised, appellant's counsel advised the court "that it was an absolute necessity" that the doctors be subpoenaed "so that they may be examined and cross-examined, as Dr. Perretti may be." [17]

Clearly the court did not make "it necessary for Fooks to bring forth witnesses" nor did counsel's decision to request the presence of the experts have even the slightest relevance to the order of proof.

We take issue with Judge Bazelon's view that appellant's counsel was unduly

13. Record, pp. 333–334 (case 13,000).

14. Record, p. 3 (cases 12,998 and 12,999).

15. There was an additional practical reason for permitting appellant to proceed as he requested. The court, at appellant's request, had subpoenaed the Springfield doctors who, after examining Fooks had reported him probably incompetent when tried. The doctors were directed to appear on the day the hearings began. Record, p. 370 (case 13,000); Record, pp. 498, 499, 500 (cases 12,998 and 12,999). They were present as the hearings commenced, ready to testify. It is logical that the Springfield psychiatrists should have been allowed to testify immediately and return to their work. Dr. Perretti, on the other hand, was available at St. Elizabeths at any time on a few minutes notice.

16. Record, pp. 333, 362, 367 (case 13,000).

17. Record, pp. 333–334 (case 13,000). It was appellant who made several motions requesting that these Springfield psychiatrists appear in person. Counsel urged that since Dr. Perretti would be present in person depositions from the Springfield doctors would not suffice:

"I think under those circumstances it is absolutely necessary that the other witnesses whose testimony from the record apparently will be diametrically opposed to his do appear in person and I suggest to your Honor that it is absolutely necessary that both of them come."

limited in his examination of the prison psychiatrists. His view seems to us to overlook the fact that at the combined hearing (which was the earlier, longer, and more exhaustive of the two hearings) appellant's counsel was permitted to ask leading questions.[18] Indeed, if a balance is to be struck, the United States Attorney in this hearing was limited in his examination to a greater extent than was appellant.[19] In any case, the degree of limitation on examinations cannot be regarded as sufficient reason for claiming disregard of a statutory scheme.

The dissenting memorandum finds in the examination of appellant by his own counsel another "consequence" of depriving the certificate of its prima facie effect. The circumstance of appellant testifying in his own behalf had nothing to do with the certificate's prima facie effect. Counsel notified the court early in the combined hearing that he wished appellant to testify.[20] The appellant's recollection and understanding of his trials was undoubtedly relevant. At this point the fact that appellant had been administratively adjudged to be incompetent in Springfield *after* conviction is not controlling. The accused in a section 4244 hearing (before trial) is also "prima facie" incompetent since that

hearing is not held until a court-appointed psychiatrist reports the accused is mentally incompetent to proceed with the trial. And yet, section 4244 comprehends that the accused is to testify at the hearing. The House Report declares: "The accused's rights are protected by the added provision that his (or her) *statements at such hearings* shall not be admitted in evidence at any subsequent criminal proceeding."[21] (Emphasis added.) Appellant did not lose those rights by being cross-examined. There is nothing in section 4244 which indicates a congressional intent to limit a defendant's testimony to direct examination, and there is no rational basis for such a limitation.[22]

█ The suggestion that the United States Attorney's office does not make it a practice to challenge the psychiatric report issued in the section 4244 procedure simply tends to show that where that officer possesses no information indicating the accused is competent to stand trial he does not attack the report.[23] Certainly such inaction in one case does not constitute a waiver of the right to make a formal appearance in another nor does it indicate a congressional intent that the psychiatric opinion is not subject to attack by the prosecutor. In

---

18. Record, pp. 118–125; 226–234; 236–238; 253–254; 259–265; 274 (cases 12,-998 and 12,999).

19. See, e. g., Record, pp. 128, 133, 202, 242, 281, 289–290, 447, 451 (cases 12,-998 and 12,999).

20. Record, p. 3 (cases 12,998 and 12,999).

21. H.Rep. No. 1319, 2 U.S.Code Cong. Service 1949, p. 1928.
The dissenting statement would evidently have us believe that a defendant declared to be of unsound mind by psychiatrists before trial is not as prima facie incompetent as a prisoner certified by Prison authorities to be of unsound mind while serving a sentence. No basis for such distinction appears.

22. There was nothing unfair in the cross-examination of Fooks. The examination in both hearings was very brief and confined almost exclusively to simple questions concerning appellant's recollection of his trials, i. e., the charges, verdicts,

sentences, names of judges, names of the complaining witnesses, etc.

23. Moreover, there is certainly more reason for the United States Attorney's office to enter an appearance in a 4245 hearing, such as the present one, which involves an individual convicted *after* a jury trial, than in the 4244 situation where the presumption of innocence remains in force. The stake of the public in the disposition and treatment of *a convicted criminal or felon* then in a penal institution by due process warrants the Government's intervention if for no other reason than to insure that an otherwise valid conviction is not erroneously set aside on the untested conclusions of doctors who may or may not be aware of the legal aspects of the issues. Even after rigorous cross-examination in the fullest adversary sense the United States Attorney might well conclude and *concede* that the prima facie certificate was correct.

any event, while section 4245 may not require the presence of a United States Attorney or require an adversary-type proceeding in every case, the fact that the trial judges allowed the Government to intervene neither invalidates the findings nor raises a doubtful question of statutory interpretation.

Judge Bazelon suggests that the United States Attorney, being a subordinate of the Attorney General who has in effect (through the Prison Director) certified substantial doubt exists about Fooks' competence when tried, should be prohibited from challenging or resisting the act of his superiors. The fact that the United States Attorney is a subordinate of the Attorney General who, by statute, is charged with the duty of transmitting the Prison Director's certificate to the District Court is of no moment. The action of the Attorney General in forwarding the certificate and doctors' reports is purely ministerial; it does not represent approval of the conclusions nor accord to the certificate a higher significance than the prima facie character given it by Congress. The Attorney General does not thereby repudiate the conviction or confess error. The action of the Attorney General is not a directive to the United States Attorney to refrain from challenging the report by withholding relevant evidence. Where the public interest dictates the United States Attorney's controverting the statutory certificate and reports, the fact that the doctors and the United States Attorney are both technically subordinates of the Justice Department should not preclude intervention. The basic fallacy of a contrary view is suggested by the fact that the custodial supervision over federal penal institutions might have been entrusted to the Department of Health, Education and Welfare. It is only a coincidence that the Attorney General supervises for administrative purposes both the prosecutors and the custodians of convicted persons.

The record discloses substantial evidence to support the findings and this, in our view, precludes reversal. Whether this court would have reached the same conclusion is not the issue; this court properly limits its inquiry to the narrow question whether the trial judges' finding was supported by substantial evidence. District judges, like appellate judges, may or may not be expert in psychiatry, but the former who collectively watched both appellant and the expert witnesses for many days are better able through our time-tested judicial process to reach a sound conclusion than are we on a cold record, however diligently we may search it out.

It is evident that the hearings below, far from impairing the legislative purpose, fully effectuated the intent of Congress and the procedural details and form of the hearings were within the broad latitude which must be allowed to trial courts. The essential thing, a fair hearing as a matter of *substance,* was achieved.

BAZELON, Circuit Judge, with whom EDGERTON, Chief Judge, and WASHINGTON, Circuit Judge concur: On July 12, 1956, this court affirmed determinations made by the District Court in 1955, under 18 U.S.C. § 4245,[1] that ap-

1. "Whenever the Director of the Bureau of Prisons shall certify that a person convicted of an offense against the United States has been examined by the board of examiners referred to in title 18, United States Code, section 4241, and that there is probable cause to believe that such person was mentally incompetent at the time of his trial, provided the issue of mental competency was not raised and determined before or during said trial, the Attorney General shall transmit the report of the board of examiners and the certificate of the Director of the Bureau of Prisons to the clerk of the district court wherein the conviction was had. Whereupon the court shall hold a hearing to determine the mental competency of the accused in accordance with the provisions of section 4244 above, and with all the powers therein granted. In such hearing the certificate of the Director of the Bureau of Prisons shall be prima facie evidence of the facts and conclusions certified therein. If the court shall find that the accused was men-

pellant had been mentally competent during three separate trials and convictions in 1953. This, so far as we have been able to find, is the first appellate consideration of a proceeding under that statute. Appellant's timely petition for rehearing *in banc* was denied by this court on March 28, 1957, upon the vote of five judges to deny and four to grant. Each judge reserved the right to file a statement of his views. We state ours because we think the court's action defeats the purpose of a statute vital to the fair administration of criminal justice. The opinion of the court is silent on serious questions relating to the procedural requirements of § 4245. Nor do we think those questions are met in the statement filed today by our brethren who voted against rehearing.

Section 4245 was designed to cover the case "where preexisting mental incompetency manifests itself only after commitment under sentence."[2] It applies, in terms, only where "the issue of mental competency was not raised and determined before or during * * * trial."[3] It provides that whenever the Director of the Bureau of Prisons certifies that a prison inmate has been examined "by the board of examiners referred to in * * * section 4241, and that there is probable cause to believe that such person was mentally incompetent at the time of his trial * * * the Attorney General shall transmit the report of the board of examiners and the certificate of the Director * * * to the clerk of the district court wherein the conviction was had." The statute directs the court to hold a hearing governed by the provisions of § 4244 and makes the Director's certificate "prima facie evidence of the facts and conclusions certified therein." If the court finds "that the accused was mentally incompetent at the time of his trial" the statute directs the court to "vacate the judgment of conviction and grant a new trial."

Under § 4241, the board of examiners examines only prisoners "alleged *to be* insane." The board's opinion as to past mental condition is thus formulated only in connection with its determination of the prisoner's present condition. As construed by the Director of Prisons, § 4245 applies only to prisoners who are in fact found presently insane. According to his statement, relied upon by both the House and Senate Reports on the legislation, § 4245 applies to "any person who, during service of sentence, is certified by prison authorities *to be of unsound mind* and that such condition probably existed * * * at the time of * * * trial."[4] Thus a prisoner comes to his § 4245 hearing with an administrative finding that he is presently, and probably was when tried, of unsound mind.

Appellant was convicted of three offenses[5] before three different judges, in April, June and October 1953. Before the first trial the United States made and withdrew a motion for a mental examination. No such motions were made by either side before or during the other trials. Hence the issue of mental competency was not "determined before or during" any of the trials and the requirements of § 4245 are fully applicable.

Appellant's convictions brought separate and consecutive sentences, aggregating 13 to 39 years, which he commenced serving in May 1953, after the first conviction. On November 4, 1954, the At-

tally incompetent at the time of his trial, the court shall vacate the judgment of conviction and grant a new trial."

2. House and Senate Reports on the Legislation, 2 U.S.Code Cong.Service 1949, p. 1928.

3. Where that issue is raised before or during the trial, it is disposed of under § 4244.

4. 2 U.S.Code Cong.Service 1949, pp. 1928, 1929, emphasis supplied.

5. Two of the offenses were assaults with intent to commit rape and the other was assault with a dangerous weapon. All three were allegedly committed within a thirty-day period.

torney General transmitted to the District Court the certificate of the Director of the Bureau of Prisons that there was probable cause to believe that appellant was mentally incompetent at the time of his trial. The board's report was expressly incorporated in the Director's certificate. The certificate, therefore, was "prima facie evidence of the facts and conclusions" in the report. Among those facts and conclusions are the following: appellant was received at the Federal Penitentiary at Atlanta on January 20, 1954, and was placed in the neuropsychiatric ward of the prison hospital two weeks later. On March 11, 1954, the prison's psychiatric board diagnosed his condition as paranoid schizophrenia, certified him as psychotic and recommended his transfer to the Medical Center at Springfield. The board stated: "It was the unanimous opinion of the members of the psychiatric board that he has been psychotic for several years." On April 20, 1954, appellant was transferred to Springfield, where the diagnosis made at Atlanta was confirmed. Among the symptoms observed were "delusions of persecution, auditory and visual hallucinations, difficulty in organizing thoughts, inability at times to distinguish between fantasy and reality, impaired insight and judgment." The Springfield board expressed the opinion that "this patient has been chronically mentally ill for almost eight years."

Whatever ambiguity there may be in § 4245, one thing is clear: the certificate makes a prima facie case that the prisoner was mentally incompetent when he was tried. The statute implements the sound policy that no person should be punished who has not been fairly tried and convicted. That is the Government's policy, not Fooks'. Even if Fooks preferred to serve his sentences rather than be declared incompetent,[6] he could not prevent the Director of the Bureau of Prisons from discharging his statutory duty to institute these proceedings. They were instituted by the transmission of the Director's certificate to the District Court. The Government, not Fooks, instituted them. There was thus no case for Fooks to make and no burden of proof for him to bear. If the prima facie effect of the certificate was to be overcome, it would have had to be upon a showing made by those seeking to overcome it. In both hearings below, however, this basic scheme of the statute was overlooked.

Ignoring the fact that the Attorney General institutes these statutory proceedings, the Assistant United States Attorney assumed that Fooks was the moving party. He declared at the hearing before Judge Letts: "I take the position that the movant has the burden of proof and this proceeding is not a proceeding which the Government moved; that is, certainly not my office." Judge Letts ruled that the burden of proof was on the Government. Judge Keech held that the burden of proof was on Fooks and that it was a "severe burden." United States v. Fooks, D.C.D.C.1955, 132 F. Supp. 533, 535. What was held in this regard by Judge Schweinhaut, who sat with Judge Keech, is not disclosed by the record. All three judges imposed upon Fooks the burden of going forward.[7] Judge Keech, indeed, considered the case as one brought by Fooks under 28 U.S. C. § 2255. He said:

"Therefore, treating the present proceeding as a motion to vacate the judgment and sentence on the ground of mental incompetency of the defendant at the time of trial,

---

6. The record shows that during his trial Fooks threatened to kill his counsel if he raised the question of insanity.

7. At the earlier of the two hearings, Fooks' court-appointed counsel requested a ruling on order of proof and accepted without objection the ruling that he proceed as the movant. At the later hearing, counsel, with the court's approval, undertook to proceed as the movant. Neither counsel's failure to protest against the movant's role at the first hearing, nor his apparent acquiescence in it at the second, should influence our construction of the basic elements of the statute.

the court will deny the motion." Id., at pages 536–537.

At both hearings, the challenge to the prima facie effect of the Department of Justice certificate came from the office of the United States Attorney. Had the intent of § 4245 been carried out, that office would have been required, if it wished to overcome the prima facie case made by the certificate, to bring forward evidence sufficient to overcome it. The prosecutor might have called the prison doctors whose reports formed the basis of the certificate. If the prosecutor had called the doctors, they would have been his witnesses, and if normal rules were applied, he would have been forbidden to treat them as hostile witnesses and Fooks' counsel would have been permitted to ask them leading questions. But the district judges deprived the certificate of its prima facie effect,[8] and made it necessary for Fooks to bring forward witnesses. Although the witnesses and the prosecutor were fellow-employees of the Department of Justice, the prosecutor cross-examined them as if they had been hostile witnesses, demanding unqualified answers, and accusing them of not listening to his questions and of giving unresponsive answers. Fooks' counsel was permitted to elicit from them only the facts they could claim to know at first hand by their own observation. The background material which went into the reports incorporated in the certificate, consisting of the findings and observations of other psychiatrists and nurses on the prison staff, was excluded by literal application of narrow rules of evidence. At the hearing before Judge Letts, Fooks' counsel was not even allowed to use leading questions in examining the witnesses.

Another consequence of denying the certificate its prima facie effect was that Fooks, who was prima facie incompetent [9] by virtue of § 4245 and the administrative finding of the Department of Justice, was allowed by the judges and his court-appointed counsel to take the stand and be subjected to cross-examination by the prosecutor. Our brethren who voted against rehearing *in banc* think it not improper for the testimony of the prima facie incompetent to be taken in a § 4245 proceeding. They say the accused in a § 4244 proceeding is also prima facie incompetent [10] and that the latter statute comprehends that he is to testify at his hearing. Although our brethren point to a statement in the

---

8. Note the following colloquy between the prosecutor and one of the judges at the earlier of the two hearings.

"Mr. Troxell: * * * I feel that this provision [§ 4245] provides for the filing of the certificate which is no more than an ordinary pleading in any case.

"The pleadings in a case are not evidence at the time of trial. This certificate merely serves the purpose of creating a forum.

"Judge Schweinhaut: Which is what we are.

"Mr. Troxell: That is right. It creates a forum to make a determination regarding the issues raised by the certificate and the certificate in and of itself is not evidence. It merely sets the machinery in operation, just as an indictment sets the machinery of a prosecution in—and certainly the indictment is not evidence.

"Judge Schweinhaut: I do not have any doubt about that."

It was not until the very end of that hearing that the two judges, after five days of resistance and after all the other evidence was in, even admitted the Springfield report into evidence.

9. On the last day of the hearing before Judge Letts, Fooks became ill and "disturbed" and the balance of the proceedings, up to the court's ruling, had to be conducted in his absence. His counsel waived the necessity of his presence during the making of a stipulation as to certain evidence and during the final arguments.

10. We think there is a difference between an accused who is reported by a psychiatrist to be incompetent after an examination as provided by § 4244 and a prisoner certified by the Director of the Bureau of Prisons under § 4245. Section 4244 provides that the psychiatrist's report "may be submitted" in evidence. It does not provide that he is prima facie incompetent if the report says he is incompetent. The prisoner certified under § 4245 is prima facie incompetent.

House Report on § 4244 referring to the accused's "statements at such hearing," we think it cannot be said that either § 4244 or § 4245 contains any language directly or indirectly providing for the testimony of an incompetent. It has never been held that § 4244 authorizes such testimony and no proceeding under that statute has come to our attention in which such testimony was admitted. We think the court should reconsider whether § 4245 permits it.

Two of the three decisions below [11] were, in effect, that even if the burden was on the Government to prove beyond a reasonable doubt that Fooks was mentally competent when he was tried, there was ample evidence to sustain that burden. This court's decision agrees with that view without deciding what measure of proof is required, from whom, and through what procedure. Whether the evidence was sufficient, by any reasonably acceptable standard of proof, to support a finding of mental competence, is doubtful. But that doubt would not, in our view, call for a rehearing *in banc*. We voted for rehearing *in banc* because this court's decision rests on the assumptions that Congress intended (1) that the § 4245 hearing be of the usual judicial type, conducted like any adversary proceeding; (2) that, despite the prima facie effect of the certificate, the prisoner be treated as the movant and be required to prove that he was incompetent when tried; (3) that a representative of the Department of Justice may treat as hostile witnesses other representatives of that Department; and (4) that the testimony of a prima facie incompetent be taken for the purpose of determining his past competency.

A certification by the Director of the Bureau of Prisons that a prisoner was probably mentally incompetent at the time of his trial is, of course, not conclusive. It does not follow that the hearing to be held on the question should be of the ordinary adversary type. The requirement that the hearing be "in accord-

ance with" § 4244 indicates what Congress intended. So far as we are aware, in hearings under § 4244 after a psychiatrist appointed by the court has reported that the accused is incompetent, the United States Attorney makes no attempt to give the proceedings an adversary character. The same is true of proceedings *de lunatico inquirendo* held under D.C.Code 1951, § 21–310. The incompetent in those proceedings "becomes a ward of the court, under the familiar doctrine of paerns patriae." Overholser v. Treibly, 1945, 79 U.S.App. D.C. 389, 392, 147 F.2d 705, 708. Similar considerations dictate that hearings under § 4245 be held under some procedure different from that now countenanced by the court. We think exposition of the required procedure should await a rehearing addressed to that question.

FAHY, Circuit Judge: I voted for a rehearing *en banc*, and am fortified in having done so by the analysis of the problem contained in Judge Bazelon's statement now filed.

[11.] The exact basis of Judge Schweinhaut's decision is not clear from the record.